No. 5693.

F. E. UDELL v. ALEXANDER PEAK ET AL.

1. LIMITATION.—Under the statute of limitations of five years it is not necessary that the recorded deed under which possession is held should have been executed by more than one of two persons composing a partnership to whom power to convey was conferred by the claimant of title, he signing the firm name, or that any connection should be shown between the vendor and the original grantee. Nor is it fatal to the plea of limitation that the deed describes the land erroneously 'as to the survey of which it was supposed to constitute a part, if the description contained in it in other respects, with reference to objects in the ground marking the boundaries of the land occupied, fixes certainly its locality.

2. SAME.—The registration of deed conveying land to one holding it at the time as tenant of a third party, is not of itself evidence of a repudiation of the tenancy or of an adverse possession. The statute will not run in favor of such tenant until he notifies his landlord that the tenancy is repudiated. What will constitute such notice must depend much on the facts of the particular case.

3. LIMITATION.—Land legally surveyed under location of a valid land certificate is segregated from the mass of public domain; the equitable title is thereby vested in the owner of the certificate against which the statute of limitations will run in favor of an adverse occupant claiming the land.

4. PRACTICE.—In trespass to try title the appellee can not, by filing cross assignments of error questioning the admissibility in evidence of papers admitted in appellant's chain of title, obtain an affirmance of the judgment. Had such objections been sustained by the trial judge, the appellant might have obviated the defect, or by taking a non suit cured it on another trial.

APPEAL from Lamar. Tried below before A. M. Taylor, Esq., Special Judge.

*Maxey, Lightfoot & Denton,* for appellant: A deed admitted in evidence as a recorded instrument, to sustain the plea of five years' limitation, should not only be properly acknowledged, but should show on its face a correct description of the land under the title embraced in the deed, sufficient to show an adverse holding of the very land in litigation, so that such recorded deed would, on its face, be notice to all the world of the claim under it. (Taylor v. Harrison, 47 Texas, 457; Mc-

Louth v. Hurt, 51 Texas, 120; Kilpatrick v. Cisneros, 23 Texas, 136; Wofford v. McKenna, 23 Texas, 36; Wade on the Law of Notice, section 46 and authorities cited.)

Where a party went into possesion of land as the agent or tenant of another under an agreement to hold possession for his landlord and keep off all trespassers, and afterwards took a deed to a portion of such land under a different title and grant from that under which the land was patented, there being nothing on the face of the deed to indicate that it was a portion of the land held under the patented title, the recording of such deed was not notice to the landlord of an adverse holding by the tenant. (Word v. Drouthett, 44 Texas, 371; Towry v. Henderson, 60 Texas, 297; McLouth v. Hurt, 51 Texas, 120; Carter v. LaGrange, 60 Texas, 638; Wood on Lim., section 260; Wade on Notice, section 46; 2 Wash. Real Prop., 4 ed., p. 127, subdivs. 23, 24; Angell on Lim., 380; Id., 439, 440, 444.)

*V. W. Hale*, for appellee: A deed duly acknowledged and recorded, properly describing the land on the ground, giving the correct field notes, aided by actual possession by the grantee, the payment of taxes, claiming the land as his own, constitute sufficient notice of adverse holding to support the five years limitation, whether the deed does or does not show the name of the original grantee, or if it be incorrectly stated. (Sulphen v. Norris, 44 Texas, 243, 244, 245; Wright v. Hawkins, 28 Texas, 471; Austin v. Dungan, 46 Texas, 244, 245.)

When land is located by virtue of a valid certificate, surveyed, and field notes returned to the general land office, it is then segregated from the public domain, and as between individuals the statute of limitation will run. (Sulphen v. Norris, 44 Texas, 243, 244, 245; Wright v. Hawkins, 28 Texas, 471; Austin v. Dungan, 46 Texas, 244 and 245.

Appellees present the following cross-assignment of errors committed by the court on the trial of this cause.

The ruling of the court in admitting in evidence over (defendants') appellees' objections the deed from John Buck to Morgan and Barbary Buck, as shown in bill of exceptions No. 1.

The deeds and power of attorney referred to in the cross-assignment, were improperly admitted in evidence over defendant's objections, for the reasons shown in bills of exceptions. Norris v. Hunt, 51 Texas, 614; Johnson v. Granger, Id., 43, 45; Murry v. Land, 27 Texas, 89; Stroud v. Springfield, 28 Texas, 665.

MALTBIE, PRESIDING JUDGE.  F. E. Udell brought this suit on the twenty-second day of September, in the year 1882, against Samuel Peak et al., to recover certain portions of the Squire Mays headright, situated in Lamar county.  Peak claimed two hundred acres of the land, under a deed from Angus McNeil, by E. M. Heath & Bro., purporting to be his agent; duly registered on the first day of December, 1876.  This deed conveys two hundred acres of land in the Ramon Buford survey, by metes and bounds.  There is a conflict between the Buford and the Squire Mays; and this conflict includes the two hundred acres embodied in the deed to Samuel Peak.  Peak was in possession of the land before the date of his deed, and continued in possession, paying all taxes, until the institution of this suit.  He died during the pending of the suit, and his heirs were made parties defendant.  The trial resulted in a verdict and judgment for defendants, under their plea of limitation of five years; the title of plaintiff to the land being considered by the court below as perfect.  The appellant seeks to reverse this judgment on several grounds; one of which is the admission in evidence of the deed from Angus McNeil to Samuel Peak.  The deed conveys the two hundred acres of land in controversy, and that is all that would ordinarily be required to bar the right of the owner to recover as against one in possession who had complied with the terms of the statute of limitation of five years.  The deed was offered and admitted under the plea of limitation of five years.  It was admissible under this plea, although only one of the Heath brothers signed the deed, he signing the firm name under power of attorney from Angus McNeil to E. M. Heath & Bro.; nor was it necessary to show any connection between Angus McNeil and Ramon Buford; nor do we think it necessary that the deed should have been notice of an adverse holding of the land or of a repudiation of Samuel Peak's tenancy if any existed.  If the recitals of the deed when applied to the external objects therein described, identifying the land in controversy, although the deed purports to convey land in the Ramon Buford survey, it was admissible for the purpose for which it was offered.  The Buford and the Mays surveys conflict, and at the date of the deed from McNeil to Peak the patent to the Mays had not issued; and it may not have been known at that time in which one of the surveys the land was situated; but even if it was, there may be calls in the deed sufficiently certain to identify

the land, which is all that is required. (Kilpatrick v. Cisneros, 23 Texas, 137; Id., 36.)

There was evidence tending to show that Samuel Peak was in possession of the land in question, under an agreement with appellant to hold it for him and keep off intruders; and there was also evidence tending to show that the tenancy did not extend to this particular two hundred acres of land. Upon this state of facts the court, among other things, instructed the jury as follows:

"The law requires that every one interested shall take notice of whatever is contained in a deed properly recorded, and if you believe from the evidence herein that the said Samuel Peak had a deed to himself to said two hundred acres of land, put upon record in Lamar county, then plaintiff is charged with notice of such deed, whether in fact he actually knew it or not, and the knowledge thus imputed to him may be taken into consideration, with all the facts bearing upon the question, in determining whether or not plaintiff knew, or by the use of reasonable diligence might have known, that Samuel Peak was setting up a claim to said land adversely to plaintiff."

After the jury had deliberated for some time, they returned into open court and requested further instruction as to the effect of the recording of the deed from Angus McNeil to Samuel Peak, and whether the record of the deed was notice to plaintiff of the repudiation of Peak's tenancy; when plaintiff, by his counsel, moved the court to charge the jury that it was not notice to him of an adverse holding, which the court declined to do, on the ground that it would be a charge on the weight of the evidence.

The charge of the court as given is, we think, a correct enunciation of the law when there is an adverse holding under a deed duly recorded, when there is no claim that the occupant is holding as tenant of the plaintiff; but when the evidence tends to show such a tenancy, the charge becomes erroneous unless limited and restricted to a state of facts where such tenancy does not exist. It is probable that the jury was misled by the charge given; and, though not assigned as error, and though the charge requested was not such as should have been given without qualification, we are of opinion that, under the circumstances, the court was called upon to charge the jury to the effect that if Samuel Peak was the tenant of the plaintiff, as to

the two hundred acres of land, that the recording of the deed to himself from McNeil would not be evidence of an adverse holding or the repudiation of the tenancy on the part of Peak. It would be extremely hazardous for the owner of land to let anyone into the possession of it if such person could, by the mere recording of a deed of the land to himself, repudiate his tenancy and set the statute of limitations in motion in his favor. Such is not believed to be the law. It is well settled that before a tenant can dispute the title of his landlord and invoke the statute of limitations in his own favor, as against the title of his landlord, he must repudiate his tenancy and notify his landlord of the fact, and then the statute will only run from the time of such notice. (Carter v. Town of La-Grange, 60 Texas, 638; Wood on Lim., secs. 540, 541, 542; 4 Howard, 296; 7 Rich., 189.)

It has not been determined, so far as we are advised, what particular acts or declarations of the tenant will be considered as affording sufficient evidence of the repudiation of an existing tenancy; and from the nature of the relation of landlord and tenant, the situation of the parties toward each other, the extent and character of the trust reposed, and other circumstances that might be imagined, it would seem that the question of notice should depend largely on the special facts of each case, the law not having designated any particular act or acts of the tenant as sufficient to put the landlord on notice of a repudiation of the relationship between them.

But when circumstantial evidence is relied on to prove a repudiation of a trust or tenancy, the circumstances should be inconsistent with the terms of the trust or tenancy, and should be of a cogent and convincing character, and such that the landlord, in the exercise of ordinary prudence and diligence, would have discovered. Good faith between contracting parties demand this much. The failure of the landlord to discover the record of a deed to his tenant for the land that he occupied as such can not be an act of negligence. The landlord is entitled to rest upon the presumption that his tenant will carry out his contract in good faith, and that he will do no act inconsistent with his duty without giving express notice that he has ceased to be tenant.

The landlord can be under no obligations to search the record for a deed to his tenant, the mere acceptance of which, without giving notice, would be an act of perfidy; from which

it follows that a failure to discover the record of such a deed would not be a want of diligence on the part of the landlord, and notice of the record of it will not be imputed to him if he did not in fact know of it.

Appellant contends that the statute of limitations could not commence to run against his title until the patent issued in September, 1882, on the ground that the title remained in the State until that time. The land was surveyed by virtue of the Squire Mays headright certificate in 1841, and the patent finally issued for the land embraced in this survey. The original survey seregated the land from the public domain, and the State was ever afterwards powerless to resume control of it, and it having been appropriated by virtue of a valid certificate the equitable title was in the owner of this certificate, and the statute of limitation would run against such title. (Sulphen v. Norris, 44 Texas, 245; Sherwood v. Fleming, 25 Texas Supp., 408; Wright v. Hawkins, 28 Texas, 471.)

Appellees have filed a cross assignment of errors in reference to the admission of certain deeds in appellant's chain of title in evidence on the trial of the cause, and we are asked in the event that the deeds were improperly admitted to affirm the judgment. Although errors may have been committed against the appellant, we are of opinion that such a practice would be improper, for the reason that, had the objections been sustained in the court below, it may be that appellant could have obviated the defect in some way, or have taken a non suit and cured it in time for another trial, but we fail to see from the record that the deeds objected to are void for uncertainty. From aught that appears the land in controversy may be identified by the aid of external testimony in conjunction with the deeds. For the errors indicated we are of opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*