**HENNINGER et al. v. PICKREN et ux.** (No. 7764.)

Court of Civil Appeals of Texas. San Antonio. April 27, 1927.

Rehearing Denied May 25, 1927.

1. **Husband and wife ⟜262(1)—Property purchased in name of husband, wife, or both is presumably community property, where conveyance is silent.**

Where property is acquired by purchase during the existence of marital relation, court will presume that the property belongs to the community estate, whether the conveyance be in the name of the husband, wife, or in the names of both, unless conveyance recites that the property is intended to be the separate property of the spouse in whose name it is taken.

2. **Husband and wife ⟜264—Finding in trespass to try title that land taken in name of wife was community property held sustained by evidence.**

In trespass to try title, evidence *held* to sustain finding that land taken in name of wife was in fact community property; oral gift to wife not being shown.

3. **Landlord and tenant ⟜61—Tenant, claiming title by deed obtained during tenancy, had burden of showing superior title.**

Where, after tenant took possession of land, he obtained a deed, and, subsequently, claimed title superior to that of landlord, he had burden of showing superior title.

4. **Trespass to try title ⟜41(2)—In trespass to try title, tenant obtaining deed from common source by misrepresentation held not to sustain burden of showing title superior to landlord.**

In trespass to try title by landlord against tenant who obtained deed from common source by misrepresenting that it was merely to clear title, tenant *held* not to sustain burden of showing superior title.

5. **Appeal and error ⟜79(1)—Judgment in trespass to try title may be treated as final, though failing to dispose of two defendants who disclaimed.**

In trespass to try title, appellate court may treat judgment as final, though it fails to dispose of two defendants who disclaimed any interest in the land.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Trespass to try title by Cuthbert Pickren and wife against A. E. Henninger, who asserted title, and others. From a judgment for plaintiffs, the named defendant appeals. Affirmed.

Ramsower, Minner & Seawell, of McAllen, for appellant.

D. F. Strickland, J. Q. Henry, and J. F. Ewers, all of Mission, for appellees.

FLY, C. J. This is an action of trespass to try title to lot No. 3, in block No. 48, in the town of North McAllen, instituted by Cuthbert Pickren and Edna Pickren against J. J. Baker, Mrs. J. J. Baker, and A. E. Henninger. Appellees alleged that C. M. Rich was the common source; that he sold the land to Baker and wife; that she executed a deed, with the knowledge and consent of her husband, but without his joining in the conveyance to G. C. Hastings, who paid the consideration to the Bakers; and that Hastings and wife conveyed the land to Cuthbert Pickren, who paid the consideration and was placed by the Hastings in possession of the lot and Henninger was employed as his tenant, but that said Henninger had fraudulently obtained from the Bakers a quitclaim deed to said lot and was claiming it as his own. Appellant filed a number of exceptions to the petition, pleaded not guilty, and alleged that he purchased the property from the Bakers and was the owner of the same. The Bakers filed a disclaimer as to interest in the land. A jury was waived and upon a hearing by the court judgment was rendered that Cuthbert Pickren and Edna Pickren recover of A. E. Henning-

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

er the land in controversy; that the quitclaim deed made by J. J. Baker and wife be canceled and annulled; that the Pickrens also recover of Henninger the sum of $90 for rent due by him; and that he pay all costs of suit. No disposition was made of the Bakers.

The facts are that J. J. Baker bought the lot in controversy from Charles Rich, for $150, cash, and $50 per month until the sum of $1,000 was paid; and the deed was executed to Mrs. J. J. Baker, whose Christian name is nowhere disclosed in the record. J. J. Baker paid for the land out of a salary earned by him. He sold the lot to G. C. Hastings, but only Mrs. J. J. Baker signed the deed. The reason given by the Bakers for this was that they thought, as the deed was executed by Rich to Mrs. Baker, she alone should sign the deed when they sold the property. They placed Hastings in possession of the lot and he sold it to appellees. The Bakers made a quitclaim deed to Henninger, believing that they were clearing up the title to the parties who claimed through the deed of Mrs. Baker. When Mrs. Baker executed the deed to Hastings, he went into possession of the lot and made valuable improvements thereon. The Bakers intended to part with the lot and have never claimed to have any interest in it since the deed was executed by Mrs. Baker. The facts show that the lot was the community estate of the Bakers. Henninger was the tenant of appellees on the lot for two years, and was such tenant on April 16, 1926, when he obtained the quitclaim deed from the Bakers, who thought he was obtaining it for Hastings or his vendees. Hastings paid the Bakers the agreed consideration and was placed in possession of the lot by J. J. Baker and his wife. The deed by Mrs Baker was executed with the knowledge and consent and active co-operation of J. J. Baker and he obtained and received the consideration for the lot.

[1, 2] The five assignments of error are based on the assumption that the lot in question was the separate property of Mrs. J. J. Baker, while the uncontroverted facts under the law show that the lot was the community estate of the Bakers. None of the deeds placed in evidence are copied into the record, only statements that a deed from one party to another was offered in evidence, which conveyed the land in controversy. It is not stated that the deed from Rich to Mrs. Baker conveyed the lot to her as her separate estate and no such claim is made. Neither did Mrs. Baker in her deed to Hastings describe the lot as her separate estate. The presumption would be that the property conveyed to either spouse during the marital relation, without indicating its character as separate estate, was the community estate of the couple. Property acquired by purchase, during the marital relation, whether the conveyance be in the name of the husband or the wife, or in both names, is presumed to belong to the community estate, in the absence of a recital that it is intended as the separate property of the spouse to whom it is executed. McKinney v. Nunn, 82 Tex. 44, 17 S. W. 516; Cummins v. Cummins, (Tex. Civ. App.) 224 S. W. 903. The evidence shows that the lot was paid for out of money earned by the husband and not the separate money of the wife. Both the Bakers testified that the land was conveyed to Mrs. Baker so that she could have full control in the event of Baker's death. According to their testimony it was intended that the property should become the separate estate of Mrs. Baker after the death of Baker. There was no present intention to vest the title in Mrs. Baker. The trial judge was justified, therefore, in finding that the property belonged to the community estate. In order for a verbal gift to change the property into the separate estate of Mrs. Baker, there should have been a positive gift at the time to Mrs. Baker. That was not the status of the gift in this instance, if one was made. Baker testified:

"This deed was executed to my wife so that in case of my death it would be her property, without probate; both of us having been married and having children by previous marriages. This was done so that in case of my death she would get this property to take care of her the rest of her days. There was no reason for the deed speaking an untruth. I did consider the property as belonging to my wife. The property was purchased with my earnings, but I put in my wife's name to protect her interests in case of my death."

Mrs. Baker swore:

"The consideration was paid from my husband's salary. * * * This property was conveyed to me in my name so that in case of my husband's death I could have full use of the property. There was no reason for making the deed speak an untruth. It was considered as my property for the reason stated. He gave the property to me so that I could have clear title in case of his death."

She swore that all the arrangements were made by Baker to sell the property to Hastings, and the sale was perfectly satisfactory to him. The testimony failed to show a present oral gift of the property to Mrs. Baker, but it was contingent on Baker dying first. It was in the nature of a testamentary gift. It was so considered by the Bakers, for when the land was sold the consideration was a business into which Baker entered, and it was managed by him. He arranged the whole matter.

[3, 4] Henninger was a tenant of appellees when he concocted the scheme to obtain a lot worth at least $1,000 for $50. He wrote a letter to Baker, who was in McCook, Neb., in which he said:

"I inclose a quitclaim which would like to have you folks sign, and, if you will send it back promptly to the First National Bank with draft (sign draft) attached for $50, will pay same. You would incur no liability from any other deed you may have made, as it is merely a quitclaim."

The Bakers swore that they claimed no interest in the land and signed the quitclaim deed in order to settle the title in the persons to whom they had sold. Mrs Baker testified:

"Prior to this quitclaim deed business we had gotten a letter from Mr. Hastings saying he had sold the property. We didn't remember who he had sold to."

They thought they were removing a cloud from the title of the person to whom Hastings had sold. She said:

"At the time myself and my husband executed this quitclaim deed to said lot to Henninger, neither I nor my husband were claiming or asserting any interest in and to said lot No. 3."

On the trial they disclaimed any interest whatever in the subject-matter of the suit. The quitclaim deed was executed on April 16, 1926, and after its execution Henninger paid rent for the lot to Pickren up to May 6, 1926. He had in no way repudiated his tenancy and did not do so until after May 6, 1926. In other words, at a time when he was acknowledging Pickren as his landlord he was plotting to oust him of his possession, by leading the Bakers to believe that he was seeking to remove a seeming defect from the title executed by them to Hastings, and he is now seeking to hold the land to which he secured a quitclaim by fraud and concealment. He was acting in exceeding bad faith in seeking to undermine him and destroy his title, and, having obtained the deed by fraud and deception from the Bakers, he should not be allowed to profit by his perfidy and disloyalty. Udell v. Peak, 70 Tex. 547, 7 S. W. 786. Henninger failed to show that he held a superior title to the land as it was incumbent upon him as a tenant to show, for his quitclaim deed was tainted with fraud and deception. McKie v. Anderson, 78 Tex. 207, 14 S. W. 576.

[5] The Bakers are setting up no claim to the land in controversy, but recognize the title of appellees in the land, and were under the impression they were curing any defect in the title when they executed the quitclaim deed to appellant as he had led them to believe, and he should not be allowed to profit by his disloyalty to his landlord, and his deception in obtaining the quitclaim title. It would have been more regular to have disposed of the Bakers on their disclaimer, but, although not mentioned in the judgment, under the authority of Gullett v. O'Connor, 54 Tex. 408, we treat the judgment as final.

We have considered this case as though the Bakers were claiming an interest in the land, which they swear they have not done since the deed was executed to Hastings, but the question is as to the quitclaim deed of Henninger prevailing over the title of his landlord. He led the Bakers to believe that they were supplementing the title to Hastings and they executed the deed with that intention. When the circumstances disclosed that Henninger was a tenant of appellees when the deed was obtained from the Bakers, the burden rested on him to show a better title to the land than that held by appellees. He did not meet the demand on him, and the judgment was correct.

The judgment is affirmed.