**KRAUSE et al. v. YOUNG et ux.   (No. 7223.)**

Court of Civil Appeals of Texas. Austin.
May 9, 1928.

Rehearing Denied May 29, 1928.

1. **Vendor and purchaser** ⬅239(4)—**As against subsequent claimants who were purchasers for value without notice of infirmity in deed, question whether deed was mortgage was immaterial.**

Where land, claimed by plaintiffs in trespass to try title by adverse possession, was not inclosed or used in any way indicating actual possession by defendants' predecessors in title, and record conclusively showed that defendants were purchasers for value without notice of any infirmity in deed from such predecessors, question whether deed was mortgage was eliminated.

2. **Adverse possession** ⬅114(1)—**Evidence in trespass to try title held to warrant finding that plaintiff spouses and wife's mother did not have continuous, adverse possession of land for ten years before suit was filed.**

Evidence in trespass to try title *held* to warrant jury's finding that plaintiffs, who were husband and wife, and latter's mother, did not have peaceable, adverse, and continuous possession of land by actual and visible appropriation thereof, inclosed with sufficient fence to exclude and retain stock, cultivating, using, and enjoying it for ten years before filing of suit.

**3. Trial ⬿133(1)—Requested instruction correcting argument that only adverse suit could stop running of limitations held improperly denied.**

In trespass to try title to land, claimed by plaintiffs by adverse possession, court erred in overruling objection to closing argument of plaintiffs' counsel that, under court's definition of peaceable possession as continuous possession not interrupted by adverse suit to recover estate, nothing but bringing of such suit could stop running of ten years' statute, and denying request for proper instruction on necessity of continuity of adverse possession; both continuity and uninterruption thereof by adverse suit being required.

**4. Adverse possession ⬿48—Exclusion of adverse possessor by trespasser destroys continuity of possession, in absence of ejectment of trespasser by legal process within reasonable time.**

Where person in adverse possession of land is excluded therefrom by a trespasser, continuity of his possession is destroyed, unless he ejects trespasser by legal process within reasonable time; mere involuntary dispossession being insufficient to break continuity where reasonable diligence is exercised to regain possession.

**5. Adverse possession ⬿115(4)—Whether running of fence along southern line of north half of tract by tenant on land north of tract broke continuity of adverse possession held fact question for jury.**

Whether acts of tenant on land north of 100-acre tract, of which plaintiffs in trespass to try title claimed north 50 acres by adverse possession, in removing portion of fence along east line of 50 acres and running fence along its southern line, so as to throw them into adjoining tract, were sufficient to break continuity of plaintiffs' possession, *held* a question of fact for jury.

**6. Appeal and error ⬿1060(3)—Overruling of objection to argument that only adverse suit could stop running of limitations held erroneous and prejudicial, under evidence.**

In trespass to try title to land, claimed by plaintiffs by adverse possession, closing argument of plaintiffs' counsel that nothing but bringing of adverse suit could stop running of 10 years' statute, and court's overruling of objection thereto, *held* erroneous and prejudicial, under the evidence.

Appeal from District Court, Burleson County; J. B. Price, Judge.

Trespass to try title by Henry Young and wife against W. H. Krause and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Searcy & Hodde, of Brenham, and W. M. Hilliard, of Caldwell, for appellants.

Bowers & Bowers, of Caldwell, for appellees.

McCLENDON, C. J. Suit by Henry Young and wife, appellees, against appellants (the heirs of Wm. Krause, deceased), in trespass to try title to recover 50 acres of land in Burleson county. The appeal is from a judgment in favor of appellees, upon a special issue verdict.

Plaintiffs' recovery was based upon the jury's affirmative finding upon the only special issue submitted to them, which is predicated upon the ten years' statute of limitation, and is as follows:

"Did Henry Young for himself and for his wife, Mattie Young, plaintiffs in this suit, and Alice Greer, have peaceable, adverse, and continuous possession of the 50 acres of land in controversy, by an actual and visible appropriation of the same, inclosed with a sufficient fence to exclude from said inclosure stock on the outside thereof, and to retain stock inclosed therein, cultivating, using, and enjoying the same for a period of ten years before the filing of this suit on the 15th day of March, 1924?"

The sufficiency of the evidence to support this finding is questioned; but we think improperly so. Other errors assigned are predicated upon the action of the court with reference to certain argument to the jury by appellees' counsel. The record pertinent to these assignments we summarize as follows:

[1] The 50 acres in question was the north half of a 100-acre tract conveyed to John Greer in 1885. Shortly thereafter he built a one-room log cabin and put a small field in cultivation on the south end of the south 50 acres. The size of this field was from time to time increased, and at the date of trial it contained from 25 to 30 acres. The cabin afterward burned and another replaced it, and later a larger cabin was built. In 1895, John Greer and wife, Alice, conveyed the north 50 acres in question to A. J. Radford. In 1896 Radford gave a trust deed upon this 50 acres and other lands adjoining it to secure an indebtedness to W. L. Moody & Co. The latter foreclosed this trust deed and bought in the property thereunder on April 6, 1898. On December 28, 1898, Moody conveyed to Wm. Krause and two associates. In a partition between these grantees the 50 acres in question was allotted to Wm. Krause, through whom appellants deraigned title. Appellees asserted that the property was a part of the homestead of John Greer and wife, and that the deed to Radford was only a mortgage to secure a store account, and therefore void. The evidence upon this point is meager. Whether sufficient to support a finding favorable to appellees, we do not decide, for the reason that, up to the time of the conveyance by Moody to Krause et al., the 50 acres in question was not inclosed or used in any way to indicate actual possession by Greer and wife, and the record conclusively shows that Krause et al. were purchasers for value without notice of any infirmity in the deed from Greer and wife to Radford. This

eliminates the question whether the deed was a mortgage, independently of the decision in Eylar v. Eylar, 60 Tex. 315, and Ramirez v. Bell (Tex. Civ. App.) 298 S. W. 924.

[2] Appellee Henry Young (whose wife was a daughter of Alice Greer by a former marriage) testified that he and his wife went to live with John and Alice Greer on the south 50 acres in 1900. At that time there was a fence along the entire east line of the 100-acre tract, which constituted the west line fence of the Krause pasture, and had been built there by Krause or those under whom he claimed. His testimony with reference to fencing the remainder of the 100 acres is in many respects vague and contradictory. It is probably sufficient to support a finding that he assisted John Greer in 1900 or 1901 in fencing the west and south lines of the 100 acres. Much doubt, however, is thrown upon this testimony as to the west line, since it appears from other testimony, wholly disinterested, that in 1901 Gus Neinst, a tenant on the lands north of the 100-acre tract, ran a fence along the north line and connected to fences already in existence on the east and west lines of the 100-acre tract. Gus Neinst's testimony is clear that he joined onto fences already existing on the east and west lines of this 100 acres; and Henry Young testified that he ran the west line of fence prior to the time that Neinst built. If Henry Young's testimony is correct in this regard, then he assisted John Greer in building a string of fence along the west of the 100-acre tract, terminating on the northwest corner and leaving the north line of the 100 acres still in the open. Aside from this being a useless thing, it contradicts Henry Young's own testimony to the effect that he assisted John Greer in inclosing the entire 100 acres by connecting onto existing fences, and was in conflict with the testimony of Neinst and other disinterested witnesses to the effect that the west line fence of the 100-acre tract was appurtenant to and inclosed the lands to the west of the fence, and was old when Neinst joined it at its north corner in 1901.

There is also much conflict in the testimony concerning the fencing of the south line of the 100-acre tract. John Greer assessed for taxes 100 acres from the time he purchased in 1885 until he sold to Radford in 1895. From then until 1911 he assessed only 50 acres. On January 11, 1911, he conveyed to Henry Young and wife an "undivided interest in 100 acres more or less, being same land described in deed from W. H. Bailey to John Greer." In 1913 Wm. Krause leased a 1,250-acre pasture to Julius Neinst. According to the latter's testimony, the 50 acres in controversy was not included in the lease, which embraced the Krause pasture joining the Greer 100 acres on the east and separated from it by a fence. Some time in 1913 Julius Neinst removed a portion of this fence along the east line of the 50 acres in question and ran a fence along its south line, thus throwing this 50 acres into the Krause pasture. He testified that he was not acting as agent for Krause in this regard, and does not explain in what capacity he was acting further than may be inferred from the fact that he had the Krause pasture under lease and knew that the 50 acres was owned or claimed by Krause. According to his testimony, there was no interference with his possession of the 50 acres under this fencing until one year later some one tore the fence down. According to Henry Young's testimony, this situation only existed for about two months. As soon as he was cognizant of it he employed a surveyor to run the lines, and he then tore down the cross fence and repaired the east fence which had been removed either in whole or in part. In 1922 Julius Neinst, who was still tenant of the Krauses, again ran a fence across the south line of the 50 acres, removing the east line fence and throwing the 50 acres into the Krause pasture. This condition continued for some two years or more, and up to the time this suit was filed in 1924. While the testimony in some respects is vague, it will warrant findings to the above effect, which are sufficient to a proper disposition of the issue presented in the assignments which we sustain relating to improper argument of appellees' counsel and the court's ruling thereon.

[3] In the court's charge to the jury, the following definition was given:

"By 'peaceable possession' is meant such as is continuous and not interrupted by adverse suit to recover the estate."

The bills of exceptions relating to the improper argument of appellees' counsel, objections thereto, requested instructions, and the court's ruling thereon cover several pages of the transcript. We shall only state their substance and general effect, as follows:

In his closing argument to the jury appellees' counsel took the position that, under the court's definition of peaceable possession above quoted, nothing but the bringing of an adverse suit could stop the running of the ten years' statute of limitations, once it began to run. This argument was objected to and the court requested to give a proper instruction on the necessity of continuity of adverse possession. This objection and request were overruled. Appellees' counsel then read to the jury the quoted definition and argued that the court had instructed in accordance with his previous argument. The objection and request were renewed and again overruled. This ruling was tantamount to a charge in accordance with the construction appellees' counsel gave to the court's definition of peaceable possession.

As an abstract proposition this statement of the law is clearly erroneous. The definition quoted is substantially the language of the statute, but is not subject to the interpretation appellees' counsel gave it, in which the court acquiesced. The statutory definition clearly requires both continuity of possession and uninterruption thereof by an adverse suit.

[4, 5] The contention of appellees, while conceding this general principle, is that the argument was proper as applied to the facts of this case under the holding in Shields v. Boone, 22 Tex. 198; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609, and Glover v. Pfeuffer (Tex. Cr. App.) 163 S. W. 984 (writ of error refused). The holding there, however, was merely to the effect that the statutory definition of peaceable possession changed the common-law rule that entry alone of the owner without dispossession or disseizin was sufficient to break continuity of adverse possession. In the Cobb Case the owner entered for a very short period, with the consent or acquiescence of the tenant of the adverse possessor. The tenant was not dispossessed of other portions of the land, and this situation existed only for a very short time when the tenant ejected the owner. In the Glover Case the entry was by naked trespassers who did not take possession of the entire tract, but only of portions of it, making certain improvements. One of these trespassers after negotiations with the party in possession abandoned the premises; the other was ejected by the party in possession by legal proceedings. The delay in bringing these proceedings was satisfactorily explained and the trial court held that it was not unreasonable. We quote the following from Chief Justice Fly's opinion:

"If appellees in this case had been forcibly ousted by those who entered upon the land, from the entire land, and the trespassers had held the whole of it for a time sufficient to cause a break in the continuity of possession, there might be a basis for the claim that there was not continuous, adverse possession; but, according to the testimony of Hildebrand, he at no time was dispossessed of the entire land by Miller and Schorp, but at all times exercised acts of ownership over it and had it fenced."

Manifestly these decisions have no application where the possession is broken by a complete ouster either by the owner or a trespasser; the only question in that regard being whether there had been in fact such dispossession or ouster. A proper determination of that question is reached by application of the following rule to the peculiar facts of the particular case:

"Where a person in adverse possession of land is excluded therefrom by a trespasser, the continuity of his possession is thereby destroyed unless, within a reasonable time, he ejects the trespasser by legal process." Note, 22 A. L. R. p. 1460.

Mere dispossession where it is not voluntary is not sufficient to break the continuity where reasonable diligence is exercised to regain the possession. Whether the acts of Neinst in 1913 were sufficient to break the continuity of Young's possession, we think is clearly a question of fact.

[6] As applied to the evidence, the argument and ruling of the trial court thereon were erroneous and prejudicial. This was sufficient to support a finding that there were no such acts of ownership exercised by Young or Greer prior to 1913 as to amount to adverse possession against Krause and that Young's possession began with his removal in 1913 or 1914 of the fence placed by Neinst along the south line of the 50-acre tract. If the jury took this view of the evidence, it was necessary for them to disregard Neinst's dispossession of Young in 1922, in order to complete the 10-year period. The argument and ruling of the court thereon apply equally to the asserted loss of possession by Young in 1922 as to the asserted break in continuity of his possession in 1913. In other words, if the jury took the view that Young's possession began in 1913 or 1914 under the argument and ruling of the court thereon, there must necessarily be a finding for Young, because the argument asserted, and the court acquiesced in the assertion declining to instruct the jury to the contrary, that nothing but an adverse suit would stop the running of the statute, and the evidence conclusively shows that there was no adverse suit up to the time this suit was brought in 1924.

The trial court's judgment is reversed, and the cause remanded.

Reversed and remanded.