BURROUGHS et al. v. SMITH.   (No. 7231.)

Court of Civil Appeals of Texas. Austin.
June 13, 1928.

Rehearing Denied July 5, 1928.

1. Adverse possession ⬅️46—Peaceable possession can only be interrupted by suit instituted and prosecuted (Rev. St. 1925, art. 5514).

Under Rev. St. 1925, art. 5514, defining peaceable possession, peaceable possession can only be interrupted by an actual suit being instituted and prosecuted agreeably to due forms of law.

2. Landlord and tenant ⬅️66(2)—Lessee must repudiate lease and give notice to lessor before his possession can be considered adverse.

A lessee or tenant must repudiate lease contract and give notice thereof to his lessor

or landlord before his possession can be considered as adverse.

**3. Adverse possession 115(4)—Evidence held to establish as matter of law that defendants and predecessors were in peaceable possession of lands claimed by plaintiff from July 5, 1900, to June 24, 1925 (Rev. St. 1925, art. 5514).**

In action in trespass to try title, evidence *held* to establish as matter of law that defendants were in peaceable possession of lands claimed by plaintiff west of fence line from July 5, 1900, to June 24, 1925, under Rev. St. 1925, art. 5514, defining peaceable possession, and issue of continuous possession should not have been submitted to jury.

**4. Evidence 243(2)—Admissions of defendants' predecessor's agent regarding boundary 17 years after limitation commenced to run in favor of predecessor held inadmissible to defeat limitation title already perfect in predecessor.**

Admissions and declarations by defendants' predecessor's agent regarding true boundary line between surveys, 17 years after limitation commenced to run in favor of predecessor *held* inadmissible to defeat limitation title already perfect in predecessor.

**5. Evidence 242(2)—Admissions of agent authorized to lease lands are not admissible to defeat limitation title already perfected in principal, nor to show principal's possession was not adverse.**

Admissions or declarations of an agent whose authority is merely to lease lands and collect rentals are not admissible to defeat limitation title already perfected in his principal, nor to show that possession of principal during period limitation was running in his favor was not in fact adverse to owner within meaning of law.

**6. Evidence 121(2)—Evidence regarding admissions of defendants' predecessor's agent regarding true boundary while offering to lease is not admissible as res gestæ.**

In action in trespass to try title, evidence regarding admissions of agent of defendants' predecessor in title regarding true boundary line made in connection with an offer to lease lands to plaintiff, a stranger to title, is not admissible as res gestæ, but was purely hearsay.

**7. Adverse possession 85(2), 113—Evidence regarding offer to purchase lands in controversy held inadmissible to defeat title already perfected by limitation, but was admissible only to show character of possession.**

Evidence that defendant offered to purchase lands in controversy from plaintiff after his title by limitation had been perfected was not admissible for purpose of defeating title already perfected by limitation, but was admissible only for purpose of explaining character of defendant's possession.

**8. Trespass to try title 44—Defendant's explanation of offer to purchase land in controversy from plaintiff was for jury.**

In suit in trespass to try title, defendant's explanations and excuses for offering to purchase land in controversy from plaintiff were questions for jury.

**9. Witnesses 149(1)—In trespass to try title, in which defendants impleaded their grantors plaintiff's testimony regarding conversation with grantors' deceased father held inadmissible; "parties" (Rev. St. 1925, art. 3716).**

In suit in trespass to try title, in which defendants impleaded their grantors on their warranty of title, plaintiff's testimony regarding conversation with grantors' father regarding strip in controversy *held* admissible, since grantors were bound by judgment rendered, and were "parties" to suit within meaning of Rev. St. 1925, art. 3716, prohibiting parties from testifying against heirs or legal representatives of decedents.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Party.]

**10. Trespass to try title 28—In suit in trespass to try title, defendants' grantors were properly impleaded on their general warranty of title.**

In suit in trespass to try title, defendants' grantors were properly impleaded on their general warranty of title, and must defend that title.

**11. Covenants 100(1)—Defendants in trespass to try title having impleaded grantors, must urge available defense of limitation or other defense of title which grantors warranted to them.**

Defendants, in suit in trespass to try title, having impleaded grantors on their general warranty of title, it was incumbent on defendants to urge available defense of limitation or any other sufficient defense of any part of title which grantors warranted to them.

Appeal from District Court, Coke County; J. F. Sutton, Judge.

Action in trespass to try title by Richard Smith against J. B. Burroughs and others, in which Burroughs impleaded H. A. Chapman and others. From the judgment, defendants and parties impleaded appeal. Reversed and remanded.

D. I. Durham and J. A. Thomas, both of San Angelo, for appellants.

Collins, Jackson & Snodgrass, of San Angelo, and G. S. Arnold, of Robert Lee, for appellee.

BLAIR, J. Appellee, Richard Smith, sued appellant J. B. Burroughs in trespass to try title for the recovery of survey 16, in Denison and Southwestern Railway Company block Z, in Coke county. Burroughs answered that he owned survey 17 in said block Z which adjoins survey 16 on the west; that the boundary line between those surveys had been fixed by a certain old fence; and pleaded "not guilty" as to any lands claimed by appellee lying west of that fence; and also

pleaded title thereto under the 10-year statute of limitation. Burroughs impleaded appellants, H. A. Chapman and M. Mable Chapman Pegues and their respective spouses, seeking to recover damages upon their warranty of title, in the event the lands were awarded to appellee. The impleaded appellants adopted Burroughs' answer, and admitted liability on their general warranty of title, in the event appellee recovered any lands lying west of the old fence line, at the rate of $15 per acre. The limitation plea was the only issue submitted to the jury. The two special issues submitting limitation were, in substance, first, whether appellants and their predecessors in title had been in possession of the lands claimed by appellee west of the old fence line for any continuous period of 10 years or more between July 5, 1900, and the date of the filing of this suit, June 24, 1925; and, second, whether that possession was adverse to appellee. The jury were instructed to answer the second issue only in the event they answered the first issue in the affirmative. They answered the first issue in the negative, and consequently did not answer the second issue. Upon this finding judgment was rendered for appellee for a strip of land about 200 varas wide and 1,900 varas long, situated west of the old fence line, and containing 79 acres; and Burroughs was given judgment against the impleaded appellants upon their warranty of title to him for $1,185. Appellants attack the judgment awarding the lands to appellee upon the following grounds:

(1) That the evidence established their plea of limitation as a matter of law.

(2) That the judgment should be reversed in any event because the court erroneously admitted certain evidence to the effect that Harve Chapman, through unauthorized admissions and declarations of his rental agent, Dick Chapman, disclaimed any interest in the lands in controversy.

The two propositions or assignments will be considered together. The evidence shows that some time prior to 1900 Harve Chapman was awarded survey 17 by the state of Texas, and either in 1900 or prior thereto constructed the fence in question, inclosing the lands in suit with survey 17, which was commonly known as the "Chapman pasture." On August 25, 1900, the adjoining survey 16 was awarded by the state of Texas to J. T. Smith. From 1900 to 1906, both inclusive, appellee Richard Smith leased the Chapman pasture, and used and occupied the lands in controversy as lessee or tenant of Harve Chapman. In September, 1906, appellee purchased survey 16 from J. T. Smith, and went into possession of it. He then stapled down the wire on the fence in question at intervals, so as to permit stock to pass from the Chapman pasture, which he had leased, to his own

lands, survey 16; and this occupancy of the two surveys continued through 1907, appellee again leasing the Chapman pasture for the year 1907. In 1908, the Chapman pasture was leased to J. J. McKinney, who repaired the old fence and occupied the lands in controversy; appellee quietly surrendering possession to him. In 1909 and 1910 Harve Chapman leased the Chapman pasture to Oscar Burk, who occupied the lands in controversy and maintained the fence at its original position. From 1911 to 1924, the testimony is very meager as to who leased and used the Chapman pasture; but, with the exception of a short period in which one Fisher leased it, it was usually occupied by appellee under lease from either Harve Chapman or appellants H. A. Chapman and M. Mable Chapman Pegues, who deraigned title through their father, Harve Chapman, he having died in 1917.

Appellants H. A. Chapman and M. Mable Chapman Pegues conveyed survey 17 to appellant Burroughs by a general warranty deed, dated February 28, 1925, intending to convey all lands lying west of the old fence line in question. Shortly thereafter Burroughs, over the protest of appellee, rebuilt the old fence at its original location, using some of the old posts which clearly showed the old fence line. In short, the evidence of appellants shows that from 1900 to 1925, the date of filing this suit, Harve Chapman or his successors in title were in continuous peaceable possession of the lands in controversy, either in person or through tenants. Nor does the evidence of appellee contradict appellants on this issue. He merely proved that he purchased survey 16 in 1906; that on June 25, 1907, in the absence of, and without notice to, Harve Chapman, he made a survey of 16, which showed, according to the field notes, that a part of it—a strip about 200 varas wide and 1,900 varas long, containing 79 acres—lay west of the old fence line in question and in the Chapman pasture; that shortly after making this survey he began to claim the land in controversy. Appellee never, after he purchased survey 16, went into possession of the land in controversy as owner, but only as a tenant of either Harvey Chapman or his successors in title; nor did he ever repudiate his lease contracts; nor give any notice to the Chapmans that he was claiming or taking possession of the lands in controversy other than as tenant or lessee.

It therefore clearly appears that the only conclusion deducible from the undisputed evidence is that appellants established continuous peaceable possession of the lands in controversy for not only a 10-year period, but for almost a 25-year period under provision of article 5514, R. S. 1925, which defines peaceable possession as follows:

" 'Peaceable possession' is such as is continuous and not interrupted by adverse suit to recover the estate."

[1] The courts have construed this statute to simply mean what it says, and to define a "peaceable possession" as one which is continuous and not interrupted by adverse suit; or as is held in the case of Shields v. Boone, 22 Tex. 198:

"A peaceable possession can only be interrupted by an actual suit being instituted, and prosecuted agreeably to the due forms of law. * * * "

This holding was again expressly approved by the Supreme Court in the case of Cobb v. Robertson, 99 Tex. 138, 147, 86 S. W. 746, 749 (122 Am. St. Rep. 609), from which we quote the following:

"We are not here speaking of the rule of the common law that a sufficient entry by the owner of premises, adversely held, operates, of itself, as an interruption of the statute of limitations in favor of the possessor, for that rule is changed by the statute which defines a peaceable possession as one which is 'continuous and not interrupted by adverse suit to recover the estate.' * * * From this it is evident that a possession which is continuous can only be interrupted by suit; and hence the necessity of plaintiffs' showing in order to sustain this contention, that they actually receive the possession from Logan, so as to break its continuity."

In the recent case of Krause v. Young, 6 S.W.(2d) 800, this court held, applying the rule above announced, that, in order to break the continuity of possession and toll limitation already running in favor of another, the owner must bring suit to recover the lands, or show such entry and possession by another as will amount to a complete ouster of the one claiming limitation for such a period of time as will be deemed unreasonable for said claimant not to eject by legal proceedings the party so interrupting his possession.

[2, 3] Appellee makes no contention that he or any one ever entered or gained possession of the lands in controversy sufficient to complete ouster of appellants and their predecessors in title; nor as would operate in any manner as an interruption of the continuity of possession and of limitation already running in favor of appellants. The only possession appellee ever had was that of lessee or tenant; and it is well settled law that a lessee or tenant must repudiate his lease contract and give notice thereof to his lessor or landlord before his possession can be considered as adverse. 1 R. C. L. 747, "Adverse Possession," § 68; Flanagan v. Pearson, 61 Tex. 302; Bryson & Hartgrove v. Boyce, 41 Tex. Civ. App. 415, 92 S. W. 820; Carter v. La Grange, 60 Tex. 636; Udell v. Peak, 70 Tex. 547, 7 S. W. 786; Henninger v.

Pickren (Tex. Civ. App.) 295 S. W. 264; Wilson v. Beck (Tex. Civ. App.) 286 S. W. 315.

So we must conclude that appellants established continuous "peaceable possession" from July 5, 1900, to June 24, 1925, as a matter of law, and the issue of continuous possession should not have been submitted to the jury over the objection of appellants.

The remaining questions relate to the admissibility and sufficiency of the evidence to authorize the submission of the issue of adverse possession to the jury; it being contended by appellants that the only evidence bearing upon that issue was improperly admitted. Bearing upon the issue, appellee proved that in 1917 Harve Chapman was stricken with paralysis, and his brother, Dick Chapman, represented him in the matter of leasing the Chapman pasture, his sole authority being to lease and collect the rentals; that shortly before Harve Chapman's death in 1917 his agent Dick Chapman began negotiations with one Millard Smith looking to the leasing for a term of years the Chapman pasture to said Millard Smith, a nephew by marriage to appellee. These negotiations were never consummated into a contract, but concerning them Millard Smith was permitted, over appellants' objections, to testify, in substance, that Dick Chapman told him and admitted to him that the true boundary line between the surveys in question was about 175 to 200 yards west of the old fence line, and offered to enter into a lease contract with witness with the understanding and agreement that witness would rebuild the fence on the true boundary line.

Dick Chapman was dead at the time of this trial; but his son, who testified that he was present when all negotiations between his father and Millard Smith were being conducted, flatly contradicted Smith's testimony with reference to the proposed removal of the fence to the line Smith claimed Dick Chapman designated as the true boundary between surveys 16 and 17.

[4, 5] Clearly the testimony of Smith was not admissible. The admissions and declarations testified to were made 17 years after limitation commenced to run in favor of Harve Chapman, and, if admissible at all, which we do not concede, they cannot operate to defeat the limitation title already perfect in Harve Chapman; but were admissible only as bearing upon the issue of whether Harve Chapman's possession had been in fact adverse or hostile to appellee. 2 C. J. 272, § 611 (b); Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 511.

However, we are clear in the view that Dick Chapman's admissions or declarations to Millard Smith were clearly not admissible for any purpose, because an agent with authority only to lease lands and collect the

rentals thereon cannot bind his principal by admissions or declarations which would in effect defeat the principal's title. In other words, it is settled law in this state that the admissions or declarations of an agent whose authority is merely to lease lands and collect the rentals are not admissible to defeat the limitation title already perfected in his principal; nor are they admissible as showing that the possession of the principal during the period limitation was running in his favor was not in fact adverse to the owner within the meaning of the law. Lamar County v. Talley (Tex. Civ. App.) 94 S. W. 1069; William Cameron & Co. v. Blackwell, 53 Tex. Civ. App. 414, 115 S. W. 856; Blanton v. Mayes, 58 Tex. 429.

[6] Nor was Smith's testimony admissible as res gestæ, as contended for by appellee. It was not part of any contract actually consummated, nor of any transaction at issue in this case, but was merely a statement made in connection with an offer to lease lands to a stranger to the title by an agent who clearly had no authority to bind his principal by his admissions or declarations, and which were clearly beyond the scope of his authority as an agent. The testimony was therefore purely hearsay, and should have been excluded. City of Austin v. Ritz, 72 Tex. 391, 9 S. W. 884; Texas, etc., Ry. Co. v. Crowder, 70 Tex. 222, 7 S. W. 709; City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519; International Travelers' Ass'n v. Branum, 109 Tex. 548, 212 S. W. 630; 22 C. J. 450.

[7, 8] The remaining evidence bearing on the issue of adverse possession is the acts and conduct of appellant Burroughs in offering to purchase the lands in controversy from appellee shortly before he rebuilt the fence on the old fence line in 1925. Burroughs testified that he made the offer of purchase for the sole purpose of avoiding a lawsuit, and with the view of simply buying his peace, without any intention of recognizing any right of appellee to the lands. At the time he made the offer of purchase, his title by limitation had been perfected by a continuous period of possession for almost 25 years. The evidence is therefore not admissible for the purpose of defeating the title already perfected by limitation, because it in no manner constituted a conveyance of that title to the lands, but under the above decisions was only "admissible for the purpose of explaining the character of possession held and asserted" by appellants. It is true that appellant Burroughs explained and excused his acts and conduct with respect to his offer to purchase, but the explanations and excuses are themselves questions for the jury. If they should believe that appellant Burroughs' offer to purchase was solely to buy his peace and avoid a lawsuit, then he has fully explained the character of his possession as

8 S.W.(2d)—20

being adverse and hostile to appellee. But these are questions for the jury.

From what has been said herein, we reverse and remand the cause for another trial. If on another trial the evidence is the same with reference to the issue of continuous peaceable possession, then that issue need not be submitted to the jury, but only the issue of adverse possession need be submitted in that circumstance.

The order reversing and remanding the case requires us to pass upon appellee's cross-assignments of error, with reference to excluding certain of his own testimony. If permitted to have done so, he would have testified as follows:

"Right after that survey was made I told Harve Chapman that a strip of land lay west of that fence; that it had been surveyed out; and that some of my land was west of the fence and he said, 'All right, Dick, I will never claim an acre of your land, I just want what my deed calls for, and I don't want any that your deed calls to give to you. When you get ready, we will put the fence on the true line between our lands. I never intend to try to hold a foot of land that doesn't belong to me.'"

[9-11] This testimony was properly excluded upon the ground that it comes within the meaning of article 3716, R. S. 1925, which prohibits parties from testifying against the heirs or legal representatives of decedents. Appellants H. A. Chapman and M. Mable Chapman Pegues were properly impleaded upon their general warranty of title, and must defend that title. Having impleaded these parties on their warranty, it was incumbent upon their vendee Burroughs, to urge the available defense of limitation or any other sufficient defense of any part of the title which they warranted to him. Brown v. Hearon, 66 Tex. 63, 17 S. W. 395; Kirby v. Estill, 75 Tex. 485, 12 S. W. 807. As such parties to this suit, they would be bound by the judgment rendered. If on the trial they sustained their title, then no liability would have attached. If, on the other hand, the title which they warranted failed, then judgment should have been rendered against them fixing liability upon their covenants of warranty, and they therefore are "parties" to the suit, and come clearly within the meaning and purview of the statute in question.

Concerning this question, the case of Bennett v. Virginia Ranch, Land & Cattle Co., 1 Tex. Civ. App. 321, 21 S. W. 126, which is directly in point, holds as follows:

"We therefore hold that, where a warrantor has been made a party to the suit in such a way as to render the judgment binding upon him in favor of his vendees, he is a 'party' thereto, within the meaning of our statute, which prohibits parties from testifying against the heirs or legal representatives of decedents."

Reversed and remanded.