ACCEPTED
15-25-00075-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/17/2025 10:43 AM
CHRISTOPHER A. PRINE
CLERK

# No. 15-25-00075-CV

**In the Court of Appeals**
**For the Fifteenth Judicial District Sitting at**
**Austin, Texas**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/17/2025 10:43:04 AM
CHRISTOPHER A. PRINE
Clerk

TOMMY PARKER, JR.
*Appellant*

v.

MARY MARTHA PARRACK
*Appellee*

Appeal from the 12th District Court of Madison County, Texas
Trial Court Cause No. 18-16110

# APPELLANT'S BRIEF ON THE MERITS
# ORAL ARGUMENT REQUESTED

Greg White
gwhite@grayreed.com
GRAY REED & MCGRAW, LLP
900 Washington Ave., Suite 800
Waco, Texas 76701
(254)342-3000
(254) 342-3102 (fax)

William F. Carter
wfcarterlaw@gmail.com
201 North Main St.
Bryan, Texas 77803
(979) 779-0712
(979) 779-9243 (fax)

Jay B. Goss
Jgoss@bruhez.com
Joseph Briers
jbriers@bruchez.com

BRUCHEZ & GOSS, PC
2740 Copperfield Dr.
Suite 200
Bryan, Texas 77802
(979) 268-4343
(979) 268-5323 (fax)

**Attorneys for Appellant Tommy Parker, Jr.**

## IDENTITY OF PARTIES AND COUNSEL

Plaintiff/Appellees:                        **TOMMY PARKER, JR.**

Trial Counsel for
Plaintiff/Appellees:

Jay B. Goss
Jgoss@bruhez.com
Joseph Briers
jbriers@bruchez.com
BRUCHEZ & GOSS, PC
3740 Copperfield Dr., Ste. 200
Bryan, TX 77802
(979) 268-4343
(979) 268-5323 (fax)

William F. Carter
wfcarterlaw@gmail.com
201 North Main St.
Bryan, Texas 77803
(979) 779-0712
(979) 779-9243 (fax)

Appellate Counsel for
Plaintiff/Appellant

Greg White
gwhite@grayreed.com
GRAY REED & MCGRAW, LLP
900 Washington Ave., Suite 800
Waco, Texas 76701
(254)342-3000
(254) 342-3102 (fax)

Defendant/Appellant:                  **MARY MARTHA PARRACK**

Counsel for Defendant /
Appellant:

Laura Upchurch
upchurch@upchurchyates.com
Upchurch & Yates, LLP
315 S. Park St.
Brenham, TX 77833
(979) 316-1300
(979) 316-1030 (fax)

# Table of Contents

*Page*

Identity of Parties and Counsel ........................................................ 2

Index of Authorities ...................................................................... 5

Statement of the Case ................................................................... 7

Statement Regarding Oral Argument ............................................... 8

Record References ........................................................................ 9

Issues Presented ..........................................................................10

Introduction.................................................................................. 11

Statement of Facts .......................................................................12

    Family History ........................................................................12

    The Executive Rights Deed ....................................................14

    The Remainder of the Trust Property.......................................17

    The Use of the Property .........................................................19

    Procedural Background.......................................................... 20

Summary of the Argument........................................................... 24

Argument and Authorities ........................................................... 25

    a)   Standard of Review .................................................... 25

    b)   Issue No. 1: The evidence is conclusive on the issue of
breach of fiduciary duty. A fiduciary cannot self-deal in a way
that totally benefits the fiduciary and totally deprives the
beneficiary of any benefit. A fiduciary bears a heavy burden to
prove that a self-dealing transaction is fair..........................................27

    c)   Issue No. 2: The evidence does not support a conclusion
of adverse possession because the possession is not hostile or

adverse. There is evidence of use as to a 780-acre tract, but no evidence that there was an ouster of the specific tract against which adverse possession is claimed.........................................33

Conclusion........................................................................... 40

Certificate of Compliance ............................................... 42

Certificate of Service........................................................ 43

Appendix ............................................................................ 44

# INDEX OF AUTHORITIES

## Cases

*Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1964) ............................................. 29

*Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986) .......................................37

*Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) ..............................................27

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) ......................25, 26

*Collins v. Smith*, 53 S.W.3d 832, 840 (Tex. App.--Houston [1st Dist.] 2001, no pet.) .......................................................................... 29

*Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ............................................................. 36, 37

*Estate of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex. App.--Houston [14th Dist.] 1993, writ denied) ................................................. 30

*Ex parte K.F.*, No. 10-19-00437-CV, (Tex. App.—Waco May 25, 2022, no pet.)........................................................................... 26

*Fitz-Gerald v. Hull*, 237 S.W.2d 256, 261 (Tex. 1951) .................................. 29

*Freeman v. Pierce*, 250 S.W. 778, 781 (Tex. Civ. App. 1922, no writ).............37

*Home Owners' Loan Corp. v. Cilley*, 125 S.W.2d 313, 316 (Tex. Civ. App.--Amarillo 1939, writ ref'd).............................................................35

*In re King's Estate*, 244 S.W.2d 660, 661 (1951).............................................27

*International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963)........................................................................................ 29

*Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938)................................. 30

*Keels v. Keels*, 427 S.W.2d 913, 916 (Tex. Civ. App.--Tyler 1968, no writ)........................................................................................35

*Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509 (1942) .......................................................................... 29

*Lee v. Hasson*, 286 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ...................................................................... 30

*McGuire v. Assembly by Us, LLC*, No. 10-19-00310-CV, at *7-8 (Tex. App.—Waco Dec. 22, 2021, no pet.) ........................................ 26

*Mead v. RLMC, Inc.*, 225 S.W.3d 710, 715 (Tex. App.—Fort Worth 2007, pet. denied) ...................................................................... 38

*Sosa v. Balch Springs*, 772 S.W.2d 71, 72 (Tex. 1989) ...................................27

*Spiller v. Woodard*, 809 S.W.2d 624, 627 (Tex. App.--Houston [1st Dist.] 1991, no writ) ..................................................................36

*Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex. 1974) .......................................................................................... 29

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) .................... 26

*Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 508 (Tex. 1980) .................. 30

*Thomas v. Sw. Settlement & Dev. Co.*, 123 S.W.2d 290, 297 (Tex. 1939) ..........................................................................................35

*Toal v. Smith*, 54 S.W.3d 431, 434-35 (Tex. App.—Waco 2001, pet. denied) .........................................................................................27

*Todd v. Bruner*, 365 S.W.2d 155, 159-61 (Tex. 1963) .................................39

*Udell v. Peak*, 70 Tex. 547, 7 S.W. 786 (Tex. 1888) ....................................35

## Other Authorities

Hall, Standards of Review in Texas, 29 ST. MARY'S L.J. 351, 481-82 (1998) ......................................................................................... 26

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case:* | This is a dispute involving family members over real estate. Parker sued Parrack for statutory fraud, common law fraud, negligent misrepresentation, and breach of fiduciary duty. |
| *Trial Court:* | The case was tried to a jury in the 12th District Court of Madison County. The Hon. David Moorman presided. |
| *Trial Court's Action:* | The jury answered all liability questions on Parker's claims in favor of Parrack. The Trial Court entered judgment on the jury verdict. The final judgment also included a declaratory judgment declaring Parrack Ranch, Ltd. to be the owner of a 780-acre tract in dispute, saying that the 2011 Special Warranty Deed was a valid conveyance of Parker's executive rights and his interest in bonus paid on oil, gas and other minerals, and declaring that Parrack was entitled to retain any bonus payments received since the 2011 Special Warranty Deed. The Trial Court denied Parrack's request for attorney's fees. |

## STATEMENT REGARDING ORAL ARGUMENT

The Court should grant oral argument in this case. It involves distinct legal issues that can be analyzed with a straightforward set of facts. However, both issues are significant. The first issue concerns the requirement that an undisputed fiduciary must justify a transaction in which the fiduciary benefits and the beneficiary suffers. Here, a single transaction resulted in a $1,000,000 windfall to the fiduciary. It appears that such a transaction between family members would only be justified in the rarest of circumstances. If the courts are to continue scrutinizing self-dealing rigorously, the Court should find oral argument helpful.

The second issue involves adverse possession against a co-tenant. The question is whether general information from one co-tenant claiming continuous exclusive use of the property is enough to establish an ouster of a specific tract of land that is only part of the entire property. Here, there is evidence that the Defendant was operating a ranch on 780 acres; however, the adverse possession claim only applied to 339 acres. Evidence of adverse possession must demonstrate an ouster of the 339 acres, not just general use of the entire property. An oral argument would enable the court to evaluate the adverse possession claim more effectively.

## RECORD REFERENCES

*Clerk's Record:*

There is one volume of the Clerk's Record, referenced as C.R. ___.

Approximately 450 pages of the Clerk's Records are Exhibits attached to the parties' designated Trial Exhibits (C.R. 698-1020, and C.R. 1054-1179).

*Reporter's Record:*

There are six volumes of the Reporter's Record. The Master Index (Vol. 1), the record of the jury trial (Vol. 2, 3, 4 & 5), and the Exhibit Index (Vol. 6). They will be referenced as R.R. Vol. ____, _____. Unfortunately, the Exhibit Volume (Vol. 6) is not paginated, although there is a Table of Contents. Exhibits will be referred to by the number assigned at Trial: Exhibit ___ (R.R. Vol. 6).

# ISSUES PRESENTED

Issue No. 1: The evidence is conclusive on the issue of breach of fiduciary duty. A fiduciary cannot self-deal in a way that totally benefits the fiduciary and totally deprives the beneficiary of any benefit. A fiduciary bears a heavy burden to prove that a self-dealing transaction is fair.

Issue No. 2: The evidence does not support a conclusion of adverse possession because the possession is not hostile or adverse. There is evidence of use as to a 780-acre tract, but no evidence that there was an ouster of the specific tract against which adverse possession is claimed.

# No. 15-25-00075-CV

TOMMY PARKER, JR.
*Appellant*

v.

MARY MARTHA PARRACK
*Appellee*

## APPELLANT'S BRIEF ON THE MERITS

To the Honorable Court of Appeals:

This is the Brief on the Merits filed by the Appellant Tommy Parker, Jr.

### INTRODUCTION

Parker and Parrack are brother and sister. Their grandparents owned significant property and distributed it to the children and grandchildren in essentially the same way. However, they favored Parker, treating him more like one of their children than a grandchild. He received property directly, while others, like Parrack, had to wait a generation to inherit.

This suit concerns Parrack's unilateral actions to equalize her inheritance with the gifts Parker received from her grandparents. The jury clearly agreed that both should receive roughly equal amounts. However, that is not what the law mandates. Parrack was not entitled to manipulate ownership to ensure she

11

received an inheritance equal to her brother's. The Court should not endorse such behavior.

## STATEMENT OF FACTS

Family History

Tommy Parker grew up in Madisonville, Texas.[1] His grandparents were Jim and Willie Baker.[2] His mother was Linda Westmoreland. Mary Martha Parrack was his sister.[3]

The Bakers originally owned the 780 acres involved in this dispute. They had a ranch that was nearly 5,000 acres.[4] Over their lives, parts of the ranch were sold or transferred, but the main part of the ranch was placed in a trust for their daughter, Linda Westmoreland, in 1983.[5] The trust was called the "Linda Westmoreland 1983 Gift Trust."[6]

---

[1] R.R. Vol. 2, 28.

[2] R.R. Vol. 2, 29.

[3] R.R. Vol. 2, 29.

[4] R.R. Vol. 2, 30.

[5] While they were alive, Jim and Willie Baker granted Parker 270 acres west of Madisonville, known as the Garrett Place. R.R. Vol. 2, 33. They also gave him other property. See Plaintiff Exhibits 22, 23 and 24. See also Defendant Exhibits 4-19. R.R. Vol. 6. They had helped raise Parker and treated him like the "son they never had." R.R. Vol. 3, 7.

[6] Plaintiff Exhibit 1, R.R. Vol. 6.

The Bakers apparently established similar trust arrangements for their other daughters. [7] When the Bakers started conveying property to their daughters, they also conveyed property to Parker – treating him like a son.[8] Over the years, Parker received percentage interests in land as gifts from the Bakers (the percentages were for gift or income tax purposes).[9] The primary beneficiary was Linda Westmoreland, the Bakers' daughter and mother of Parker and Parrack. Parker and Parrack (then called Mary Martha Parker) and their descendants were secondary beneficiaries. Linda Westmoreland served as the sole trustee of the trust.[10] The trust arrangement contemplates that Parker and Parrack will each receive half of the trust assets upon Westmoreland's death.[11]

The Trust's assets included two land tracts: one measuring 447 acres and the other 339 acres. The total land assets were about 780 acres, conveyed into the trust over several years.[12]

---

[7] R.R. Vol. 3, 13.

[8] R.R. Vol. 3, 18.

[9] R.R. Vol. 3, 20-21.

[10] R.R. Vol. 2, 35.

[11] R.R. Vol. 3, 80-81, 82.

[12] R.R. Vol. 3, 14. Counsel stipulated that the public record has all of the deeds that conveyed the 780 acres into the Trust. R.R. Vol. 3.,76

The property was ranch land. None of the family members lived on it. Jim and Willie Baker managed the land for many years after establishing the trust.[13] In the early 90s, Parker moved back to Madisonville and went to work for Willie Baker on the ranch. While doing that work, he lived with his mother (Westmoreland).[14] Jim Baker passed away in 1993, and Willie Baker died in 2001.[15]

In 2002, Westmoreland, acting as Trustee, conveyed the surface of a 447-acre tract to Parrack. The minerals were reserved to the Trust.[16] In 2007, Parrack transferred that 447-acre tract to Parrack Brothers, Family Limited Partnership.[17] After the conveyance of the surface on the 447 acres, Parker did "a little work" for his mom, but not much.[18] Westmoreland died in 2011.[19]

The Executive Rights Deed

Shortly after Westmoreland died, Parrack asked Parker to sign a "paper." Parrack told Parker that the purpose of the paper was "so that the oil company

---

[13] R.R. Vol. 2, 38.

[14] R.R. Vol. 2, 39.

[15] R.R. Vol. 2, 39.

[16] R.R. Vol. 2, 33, Plaintiff Exhibit 2, R.R. Vol. 6.

[17] Plaintiff Exhibit 2, Vol. 6.

[18] R.R. Vol. 2, 41.

[19] Defendant Exhibit 30, R.R. Vol. 6.

will give me all the money. All the bonus money." She said she needed the money to "pay mama's bills, expenses, and taxes." Parrack explained her reason for her request:

Q: Why—why did you want the executive rights and lease bonuses?

A: Why did I want it?

Q: Yeah. Why did you want it?

A: I don't know how to answer that question.

Q: Well, just tell me why you wanted it.

A: I needed the money. But on the property that he got, he got all the lease money and executive rights.[20]

Q: Okay.

A: So I thought it was fair, and I thought he thought it was fair.[21]

Parrack admitted she asked for this conveyance. She recalled none of the conversations about the deed, but admitted that Parker "immediately agreed."[22] She also admitted that she was "in debt" and needed the money.[23]

Parker agreed to sign the paper. "I'll give you the money one time," he said.[24] Parrack showed him the signature page and told him to sign. There was

---

[20] Parrack's husband denies that they needed the money or that they had bills they couldn't pay. R.R. Vol. 4, 105.

[21] R.R. Vol. 3, 96.

[22] R.R. Vol. 3, 95-96.

[23] R.R. Vol. 3, 98.

[24] R.R. Vol. 2, 43.

nothing to read, just a place to sign.[25] The paper was a Special Warranty Deed.[26] It conveyed:

> All of Grantor's interest in (i) all executive rights and (ii) all lease bonuses paid or to be paid on any oil and gas or other mineral lease on that certain 780.9 acre tract more particularly described in that certain Gift Deed from Willie Lee Baker to Linda Westmoreland, Trustee of the Linda Westmoreland 1983 Gift Trust, et al, said Gift Deed being recorded in Vol. 438, Page 246 of the Deed Records of Madison County, Texas.

Parrack did indeed get the bonus money based on the Special Warranty Deed in 2011 from a lease granted to Burk Royalty.[27] In 2014, she received nearly $381,000 to extend the existing lease to EOG Resources.[28] Parker knew that Parrack was receiving bonus money in 2012 but was not aware of the extension and the additional payment in 2014.[29]

In 2015, she signed a new lease on the property that paid over $761,000 in bonus money.[30] Despite Parker's intention to give Parrack the bonus money "one time," he never received any money from the second lease to New Gulf

---

[25] R.R. Vol. 2, 50-51.

[26] Exhibit 8, R.R. Vol. 6. The Special Warranty Deed is two pages of substance, and the granting language is not on the signature page.

[27] Plaintiff Exhibits 5 and 20, R.R. Vol. 6.

[28] Plaintiff Exhibit 11, R.R. Vol. 6.

[29] R.R. Vol. 2, 51.

[30] Plaintiff Exhibits 10 and 12, R.R. Vol. 6.

Resources.[31] Parrack was asked what she should have done if she had known that Parker thought the deed was only for one time. She said:

A: I remembered that I thought I wish he would have come and told me this, and I would have changed everything.

Q: Okay. By changing everything, meaning put it back like the way it would have been?

A: Half and half.

Q: Yeah, half and half?

A: Yes.

Q: And when did you think that?

A: When it was brought to my attentions that he thought I deceived him.[32]

## The Remainder of the Trust Property

Parrack clearly owned the surface estate on 447 acres of the total 780 acres. She shared ownership of the minerals under the entire 780 acres with Parker and shared ownership of both the surface and minerals on the 339-acre tract with Parker.[33] Parrack had never claimed 100% ownership of the 339-acre tract.[34]

---

[31] R.R. Vol. 2, 47-49.

[32] R.R. Vol. 3, 100-101.

[33] R.R. Vol. 3, 52.

[34] R.R. Vol. 4, 83.

In 2012, she handled the 339-acre tract. She claimed to transfer the entirety of the 339-acre tract to the Parrack Brothers Family Limited Partnership.[35] In a series of transactions in 2015, the 339-acre tract was ultimately conveyed into Parrack Ranch, Ltd.

The Parrack Brothers Family Limited Partnership executed a single deed conveying partial interests to a trust for Samuel Parrack, a trust for Kevin Parrack, Jr., and to James Parrack.[36] Then, on the same day, the trusts for Samuel Parrack, Kevin Parrack, and James Parrack conveyed the interest they had just received in separate deeds to Parrack Ranch, Ltd.[37] Ultimately, the Parracks built a house, a barn, and sheds on the property (on the 447-acre tract).[38] Parker assumed this was an assertion of ownership of one-half of the property.[39]

None of these deeds claimed to convey the mineral interests – only the surface estate on the 339-acre tract.

---

[35] Plaintiff Exhibit 3, R.R. Vol. 6. In her deposition, Parrack claimed that Parker "gave" it to her, but she could not locate a deed or any writing confirming this testimony. R.R. Vol. 3, 86-89.

[36] Plaintiff Exhibits 13, R.R. Vol. 6.

[37] Plaintiff Exhibits 14, 15 and 16, R.R. Vol. 6. See also R.R. Vol. 4, 71-74.

[38] R.R. Vol. 3, 59-61. There were never any structures built on the 339-acre tract. R.R. Vol. 4, 89.

[39] R.R. Vol. 3, 64-65 and R.R. Vol. 4, 47.

<u>The Use of the Property</u>

The evidence is fairly clear that the Parracks used the 780 acres much more often than Parker. At some point, Parker had placed a sign and a brand on the gate to indicate that he was an owner.[40] But that did not last much beyond Westmoreland's death (or earlier).

From the time Westmoreland transferred the 447 acres to Parrack, the Parrack family has done virtually whatever they wanted on the property. They built a house.[41] They put up fences and a gate, and constructed sheds and a barn on the 447-acre tract. But Parker was never barred from the property. Before the lawsuit in 2018, Parker was on the property, or at the Parrack house, "all the time."[42]

Although the gate to the property had a combination lock, Parker claimed to have the combination and the ability to get on the property.[43] The Parracks denied that Parker could gain access to the property uninvited, but no witness testified that Parker was barred or banned from admission.[44] There was never

---

[40] R.R. Vol. 3, 65.

[41] R.R. Vol. 4, 47.

[42] R.R. Vol. 4, 36-37.

[43] R.R. Vol. 3, 61-62.

[44] R.R. Vol. 2, 57 and R.R. Vol. 3, 144.

a letter, a phone call, a conversation, or a published notice that Parker was barred from the property. [45] In fact, all the witnesses agreed that he could come onto the property at any time. [46] And even though Parker never paid taxes or any expenses, every witness said he was never asked to pay or contribute. [47]

Procedural Background

Parker sued in August of 2018. [48] The original defendant, Mary Martha Parrack, died in August of 2022, while the case was still pending. [49] The parties recognized that Kevin Parrack, Jr., was named as Independent Executor of the Estate of Mary Martha Parrack. [50] No question was ever raised about his appearance on behalf of the Estate.

The case was tried to a jury. At the conclusion of Parker's case, the Trial Court granted a directed verdict on Parker's claim that the 2002 conveyance

---

[45] R.R. Vol. 2, 57.

[46] R.R. Vol. 3, 106, 179-180, 197 and R.R. Vol. 4, 94.

[47] R.R. Vol. 3, 181-182, 197

[48] C.R. 13-76. (The Petition is the first 11 pages (C.R. 13-23), and the remainder of the pages are exhibits referenced in the pleadings.)

[49] C.R. 132

[50] C.R. 136, See Final Judgment, C.R. 1195.

of 447 acres was void because it was in violation of the trust.[51] Ultimately, the jury was charged on six liability theories.[52] Those theories were:[53]

| | |
|---|---|
| Statutory Fraud under TEX. BUS. & COMM. CODE § 27.01[54] | Questions 1-4 |
| Common Law Fraud by non-disclosure[55] | Questions 5-8 |
| Negligent Misrepresentation[56] | Questions 9-12 |
| Promissory Estoppel[57] | Questions 13-16 |
| Breach of Fiduciary Duty[58] | Questions 17-21 |
| Unjust Enrichment[59] | Questions 22-25 |

The jury also found that the 339 acres was possessed by Parrack Ranch, Ltd., adverse to Parker for at least five years.[60]

---

[51] C.R. 1196.

[52] The live trial pleadings were the Plaintiff's Original Petition and the Defendant's Original Answer and Counterclaim. C.R. 1195. Parker filed a First Amended Petition and a Second Amended Petition, but those pleadings attempted to add new claims too late in the trial preparation process and were deemed untimely. C.R. 636-637; R.R. Vol. 2, 7-15.

[53] C.R. 1021-1053.

[54] C.R. 1025-1028.

[55] C.R. 1029-1032.

[56] C.R. 1033-1036.

[57] C.R. 1037-1040.

[58] C.R. 1041-1045.

[59] C.R. 1046-1049.

[60] Question 26, C.R. 1050.

The jury answered each question in favor of Parrack. The Trial Court signed a Final Judgment on January 14, 2025.[61] The Final Judgment adopted the jury's findings and made a declaration of rights. It said:

A. Parrack Ranch. Ltd. is the owner of all legal and equitable rights, title and interest in the surface of that certain tract of approximately 780.9 acres of land with improvements located three (3) miles of State Highway 90 on Madison County Road 106 (locally known as Ranch Lane) in the West Richardson Survey, comprised of approximately 447 Acres and 339 Acres, as described in a gift deed from J. A. Baker and Willie Lee Baker to Linda Westmoreland, Trustee, recorded on January 4, 1993 in Volume 399, Page 363 of the Deed Records of Madison County, Texas, being further described in a deed dated December 13, 2002, from Linda Westmoreland, Trustee, to Mary Martha Parrack and Kevine Parrack, recorded at Volume 640, Page 40, Deed Records of Madison County. Texas, and as described in a deed dated December 31, 2012, from Mary Martha Parrack to Parrack Brother Family Limited Partnership, recorded at Volume 1223, Page 132, Official Records of Madison County, Texas.

B. the 2011 Special Warranty Deed was a valid instrument and conveyed to Parrack all of Plaintiff's executive rights and Plaintiff's 50% interest in all lease bonuses paid or to be paid on any oil and gas and other mineral in, under, and around the 780.9 Acres; and

C. Parrack is entitled to retain all of the bonus payments she received since Plaintiff's execution of the 2011 Special Warranty Deed. for leasing of the minerals in, under and around the 780.9 Acres.

The Trial Court denied Parrack's request for attorney's fees.[62]

---

[61] C.R. 1195-1200.

[62] C.R. 1191-1194.

22

Following the final judgment, Parker filed a Motion for New Trial, challenging the legal and factual sufficiency of the evidence, among other claims.[63] This appeal followed.[64]

---

[63] C.R. 1203-1206.

[64] C.R. 1209-1211.

## SUMMARY OF THE ARGUMENT

The law has consistently scrutinized self-dealing by a fiduciary carefully. The fiduciary bears a heavy burden to justify a transaction that benefits them at the expense of the person to whom they owe a duty. In this case, Parrack was unquestionably a fiduciary to Parker. However, she received the executive rights to property, which earned her over $1,000,000. She did not give up anything in exchange for that gain. Using the relevant test for self-dealing transactions, Parrack cannot justify the transfer of executive rights based on her best version of the facts.

Parrack didn't stop with the executive rights. She transferred property, of which she knew Parker owned 50%, to her Family Partnership without any discussion or notice to Parker. Years later, she claims that Parker didn't do enough to preserve his ownership, and his ownership defaults to her under the principles of adverse possession. There are two problems. First, there is no ouster that applies to the tract she claims to adversely possess. All the evidence is a generic description of ranch use. Second, all the conduct that Parrack claims is adverse does not qualify under the law as an ouster. Therefore, the finding of adverse possession will not stand as a matter of law.

a) *Standard of Review*

Parker presents two arguments that, together, address his request for a new trial. First, he asserts that the evidence is both legally and factually insufficient to support the jury's negative responses to the questions about breach of fiduciary duty. This argument was preserved in Parker's Motion for New Trial. Second, he argues that there is also legally and factually insufficient evidence to support the jury's finding of adverse possession. This claim was similarly preserved in his Motion for New Trial.

The standard of review for both issues is well established. For claims that the evidence is legally insufficient, the record must show (a) a complete absence of evidence of a vital fact; (b) evidence offered to prove a vital fact is barred by rules of law or of evidence; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively proves the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the

evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller* at 168 S.W.3d 827; *Ex parte K.F.*, No. 10-19-00437-CV, (Tex. App.—Waco May 25, 2022, no pet.).

When a party challenges the legal sufficiency of an adverse ruling on an issue where she bears the burden of proof, she must show on appeal that the evidence, as a matter of law, establishes all essential facts supporting the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); Hall, Standards of Review in Texas, 29 ST. MARY'S L.J. 351, 481-82 (1998). In reviewing a "matter of law" challenge, the appellate court must first look at the record for evidence supporting the finding, ignoring all contradicting evidence. *Sterner*, 767 S.W.2d at 690; Hall, *supra*, at 482. If no evidence supports the finding, the court then reviews the entire record to see if the opposing position is established as a matter of law. *Sterner*, 767 S.W.2d at 690; Hall, supra, at 482. *McGuire v. Assembly by Us, LLC*, No. 10-19-00310-CV, at *7-8 (Tex. App.—Waco Dec. 22, 2021, no pet.)

Claims that the evidence is factually insufficient challenge the jury's findings. Before a jury's factual determination can be overturned, an appellate

court must consider and weigh all the evidence supporting and opposing the jury's conclusion. *In re King's Estate*, 244 S.W.2d 660, 661 (1951). The proper standard of review requires the court of appeals to examine, evaluate, and compare all relevant evidence in the record and explain why the original finding is clearly unjust, shocks the conscience, or demonstrates bias. *Sosa v. Balch Springs*, 772 S.W.2d 71, 72 (Tex. 1989). The court should only set aside the verdict if it is so against the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Toal v. Smith*, 54 S.W.3d 431, 434-35 (Tex. App.—Waco 2001, pet. denied).

b) ***Issue No. 1: The evidence is conclusive on the issue of breach of fiduciary duty. A fiduciary cannot self-deal in a way that totally benefits the fiduciary and totally deprives the beneficiary of any benefit. A fiduciary bears a heavy burden to prove that a self-dealing transaction is fair.***

Parker and Parrack's mother, Westmoreland, died in 2011. In 2012, Parrack presented a "paper" to Parker and asked him to sign it. They went to a local Notary Public to execute and acknowledge the "paper." The document was a transfer of all of Parker's executive rights in the 780-acre tract. Parker understood that the transfer was so Parrack could receive the bonus money from the lease of the 780-acre tract that was in the process of negotiation.

Parker said he never read the paper but trusted his sister.[65] And although he understood that his sister would get bonus money that belonged to him as a 50% owner, he also understood that it was for "one time only."

The "one-time only" belief was justified. Parrack said that "she was in debt," that she "needed the money," and that she was going to pay "mama's bills, expenses, and taxes." Parrack received a check for over $380,000 soon after Parker signed the paper. However, Parrack didn't use that money to pay "mama's bills, expenses, and taxes." Parrack's husband stated that they were fully capable of paying their bills and did not "need the money."

The truth was that Parrack wanted the executive rights that belonged to Parker because she believed they were owed to her as a Baker grandchild. Parker had received bonus money on property that the Bakers had given him, so Parrack must have thought it was her turn to be paid. If that was the truth—that it was her turn to get paid—she never explained this to Parker. In fact, she ultimately admitted that if Parker felt it was unfair, she should have just split the money 50/50.

---

[65] In her defense case, Parrack presented a number of witnesses whose testimony was primarily that Parrack was honest, trustworthy, and honorable. So, Parker was not alone in trusting Parrack.

Parrack took advantage of Parker's trust, and the law doesn't permit that. First, the jury found that Parrack was a fiduciary as to Parker[66] (a finding unchallenged to this point and admitted by every witness that spoke on that issue.) Second, the law is settled on the issue of fiduciary duty.

Texas courts presume transactions between a fiduciary and a party to whom she owes a duty of disclosure are unfair. *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 261 (Tex. 1951). Therefore, the fiduciary who profits from such transactions must prove they are fair. *Collins v. Smith*, 53 S.W.3d 832, 840 (Tex. App.-- Houston [1st Dist.] 2001, no pet.). These fiduciaries must demonstrate they acted in good faith and that the transactions were fair, honest, and equitable.

The Texas Supreme Court has closely examined transactions where one party places trust and confidence, while the other benefits personally. See *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex. 1974); *Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1964); *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963); and *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509 (1942).

The problem is one of equity. It is certainly true that families can have strained relations, but it never justifies treating those who are trusting

---

[66] C.R. 1041. Jury Question No. 17.

beneficiaries as strangers or opponents at arm's length. A much higher standard for evaluating conduct applies to a fiduciary relationship. *Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938).

A fiduciary, like Parrack, consents, as a matter of law, to have her conduct toward the other evaluated by the higher loyalties required by courts of equity. If the existence of difficult family relations is allowed to serve as an exception, then a cunning fiduciary could easily exploit such relations to create opportunities for a sharp bargain. *Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 508 (Tex. 1980).

When assessing the fairness of a transaction involving a fiduciary, key factors for measuring conduct include: (1) whether full disclosure was made regarding the transaction, (2) whether the consideration was adequate, (3) whether the beneficiary received independent advice, (4) whether the fiduciary benefited at the beneficiary's expense, and (5) whether the fiduciary gained significantly from the transaction considering the circumstances at the time. *Estate of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex. App.--Houston [14th Dist.] 1993, writ denied); *Lee v. Hasson*, 286 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Although the jury concluded that Parrack had not violated her duty, the evidence indicates that she failed in at least four of five factors. First, whether full disclosure was made remains a disputed issue. Parker said he didn't read the paper and trusted his sister's description of it as a "one-time only" deal. However, he was never prevented from reading the entire paper. The jury's conclusion is, at best, supported by some evidence. Nonetheless, the evidence regarding disclosure is overshadowed by the evidence related to the other factors.

Parrack gave no consideration for the transfer of the executive rights. She claimed poverty and hid what she ultimately admitted was the real reason. Love and affection for a family member cannot count as consideration for a transfer when the family member is not honest about the circumstances. When Parrack said she needed the money to cover expenses for her recently deceased mother, she was not candid. Therefore, in evaluating the consideration factor, Parrack fails the self-dealing test.

No one claims that Parker had independent advice on the transaction. He was not prevented from seeking advice, but the request was framed as a family financial matter— a beloved sister in debt because of a deceased mother. It is

unreasonable to expect Parker to obtain independent advice under those circumstances. Once again, Parrack fails the self-dealing test.

Parrack benefited from the deal at Parker's expense. Without the paper, Parker would have received 50% of the upcoming bonus payments, which were expected in the future. Parrack also admits that if Parker was treated unfairly, the right course of action would be to revert to a fifty-fifty split. Once again, Parrack fails the self-dealing test.

Ultimately, Parrack significantly benefited from the transaction, considering the circumstances at the time. Parrack received $380,000 almost immediately after the deal was finalized. A few years later, she got over $760,000 in bonus payments. In total, Parrack received more than $1,000,000 because of this single action.

It doesn't matter that Parker received bonus money on property he owned. The law doesn't require family members to inherit equally. Parrack had many chances to argue that Parker should give up his rights to the 780 acres because he had already inherited enough. If she believed this was a strong point, she admits she only "thought" Parker would agree; she didn't actually discuss it with him.

The jury's conclusion that Parrack was a fiduciary to Parker warrants a strict review of transactions that benefit Parrack or harm Parker. This transaction does not pass that strict review as a matter of law. At a minimum, the jury's negative answer to the breach of fiduciary duty questions is unsupported by the substantial evidence and is clearly wrong. The Court should reverse the judgment below and grant a new trial.

c) ***Issue No. 2: The evidence does not support a conclusion of adverse possession because the possession is not hostile or adverse. There is evidence of use as to a 780-acre tract, but no evidence that there was an ouster of the specific tract against which adverse possession is claimed.***

Parrack never received a deed to the 339-acre tract. However, she treated the property as if it were hers by right. About a year after obtaining the executive rights from Parker, she simply issued a deed to Parrack Brothers Family Partnership for all 339 acres. She wanted the entire ranch for her family and aimed to cut Parker out of his 50% interest. The deed didn't accomplish that. At best, it conveyed all the interest that Parrack held—which was 50% after the Linda Westmoreland Trust was terminated.

Several years later, the Parrack Brothers Family Partnership transferred the property through a series of deeds, which resulted in some of the title being

held by Parrack Ranch, Ltd. However, the deed records only support the conclusion that Parrack Ranch, Ltd. owned just 50% of the 339-acre tract. Knowing this, Parrack argued that Parker's claim of title had expired through adverse possession. This adverse possession claim was based on a few key facts.

First, Parrack claimed that her family had essentially treated the property as their own. They put up fences, closed access with a locked gate, and ran cattle on the land. They told the jury about building a house, a barn, and sheds but barely mentioned that these structures were on the 447-acre tract and would not adversely affect Parker's claim on the 339-acre tract.

Second, Parrack argued that Parker never attempted to claim ownership. Her husband acknowledged that Parker was at the property almost every day for years—drinking coffee and socializing. However, he did not run cattle on the land. Parrack also accused Parker of not paying for the improvements, utilities, or taxes. Of course, the improvements were not made for Parker's use or benefit, nor were the utilities. No one asked him to contribute, and no one should have unless he benefited from the improvements. Regarding the taxes, Parker never offered to pay, but he was never asked to do so.

Finally, Parrack argued that Parker could not enter the property without an invitation. They claimed the gate was locked, while Parker said he had the combination; Parrack insisted he did not. A locked gate does not constitute an ouster. All witnesses testified that Parker was never banned from the property. No letter, phone call, conversation, or public notice ever barred Parker or even attempted to prevent his access.

Parker and Parrack were co-tenants of the 339-acre tract after their mother passed away. Co-tenants are not agents; a co-tenant cannot transfer more than her interest in the shared property. See *Thomas v. Sw. Settlement & Dev. Co.*, 123 S.W.2d 290, 297 (Tex. 1939) ("A deed by one co-tenant purporting to convey the entire interest in a part of the commonly owned land conveys such interest, and only such interest, in the land as the maker of the deed possesses."); *Home Owners' Loan Corp. v. Cilley*, 125 S.W.2d 313, 316 (Tex. Civ. App.--Amarillo 1939, writ ref'd) (stating that a co-tenant, in dealing with third persons under normal circumstances, cannot bind another co-tenant through any act related to common property, and a conveyance by a co-tenant claiming to transfer the entire property interest only conveys the interest the grantor owns and does not transfer the interest owned by the non-joining co-tenant); see also *Keels v. Keels*, 427 S.W.2d 913, 916 (Tex. Civ. App.--Tyler

1968, no writ) ("[T]he mere recording of a deed to a claimant who initially entered into possession as a permissive user is no evidence of an adverse holding or the repudiation of the tenancy." (citing *Udell v. Peak*, 70 Tex. 547, 7 S.W. 786 (Tex. 1888). Second, a deed provides co-tenants with constructive notice of an adverse claim only if it is recorded before they acquire their interests. Recording a deed after the other co-tenants have already obtained their property interests does not give those co-tenants constructive notice that their co-tenant claimed an adverse interest. *Spiller v. Woodard*, 809 S.W.2d 624, 627 (Tex. App.--Houston [1st Dist.] 1991, no writ). "(R)ecord notice goes forward, not backwards." *Id. Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.— Houston [1st Dist.] 2010, no pet.).

The mere use of a deed does not, alone, help Parrack's claim of adverse possession. Neither does mere extensive use.

Clearer and more conclusive evidence is required in proof of the adverse character of the possession in such cases than is required as between strangers. The presumption is strongly against every claim by a cotenant that seeks to convert the circumstance of an apparently individual possession into an advantage over her co-tenant. A co-tenant in sole possession must make abundantly clear that she holds possession in opposition

to the rights of her co-tenants. Otherwise, her occupancy will be presumed to be that of a tenant in common. The law makes this requirement so that "greed shall not fatten under the guise of a greater vigilance, every other element necessary to constitute adverse possession must exist." *Freeman v. Pierce*, 250 S.W. 778, 781 (Tex. Civ. App. 1922, no writ).

For over a century, the rule in Texas has been:

> Accordingly, there must also be an express denial by the tenant in sole possession of the title or right to possession of a fellow tenant brought home to the knowledge of the latter, openly and unequivocally; there must also be a disseizin or ouster, with an intention to hold adversely; and the tenant as against whom an adverse title is so asserted must have actual knowledge or notice of the adverse claim. *Freeman,* at 250 S.W. 781 (Tex. Civ. App. 1922, no writ).

So, co-tenants must prove, in addition to the usual adverse possession requirements, an ouster of the cotenant not in possession or repudiation of the co-tenancy relationship. *Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.— Houston [1st Dist.] 2010, no pet.) (citing *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986)). The statutes of limitations that apply to co-tenants are not designed to run in secrecy and silence; therefore, the claimant must prove actual or constructive notice of the ouster, and the clear, unequivocal, and unmistakable repudiation of the common title. See *Dyer*, 333 S.W.3d at 713.

Parrack simply can't support adverse possession simply by claiming that the 339-acre tract was used for running cattle. That was the traditional use of the land going back to the Bakers (grandparents). Nothing that Parrack was doing was different from the prior use and would have done nothing to make a claim of exclusive ownership.

Not only is possession enough to be adverse to a co-tenant, fences don't establish possession hostile to a co-tenant. Fences are either "casual fences" or "designed enclosures." A fence is a "casual fence" if it existed before the party claiming adverse possession took possession of the land and the claimant does not demonstrate the purpose for which the fence was built. A casual fence cannot be changed to a designed enclosure through mere repair or maintenance, even if such repairs or maintenance were done "for the express purpose of keeping the claimant's animals within the enclosed area." *Mead v. RLMC, Inc.*, 225 S.W.3d 710, 715 (Tex. App.—Fort Worth 2007, pet. denied).

Parrack never tried to give any details about the fences on the 339-acre tract. The general description of using the property, building, and repairing fences, and locking a gate.[67] If Parker failed to visit the property, that is not a surrender

---

[67] Nothing about a lock on a gate operates as an ouster. It simply means that any person is not entitled to come on the property freely.

of his title or a repudiation of title by Parrack. Everything that Parrack was doing was exactly what the property was used for before Parrack created the series of deeds transferring the property to Parrack Ranch, Ltd.

Some of Parrack's actions might be seen as detrimental to Parker's right to occupy the property freely. Constructive notice of Parrack's deeds was not actual notice. They can only be understood to convey whatever interest she genuinely owned. A fair assessment of the adverse possession claim must consider other facts that indicate Parker was not ousted. He was never informed not to enter the property. He received no letters, phone calls, or oral warnings. He was welcomed when he visited. Although the 447-acre tract had a house, a barn, pens, and sheds, there was no indication that the 339-acre tract was similarly improved. Parker could see cattle and fences but could not have visited the 339-acre tract and known that Parrack denied he was still an owner.

All of the conduct that Parrack claims was adverse to Parker was just a series of things that ranchers do on their ranch. It was never specific to the 339-acre tract. That will not suffice as an ouster. An ouster occurs when the co-tenancy is repudiated and notice of that repudiation is "brought home" to the other cotenant. See *Todd v. Bruner*, 365 S.W.2d 155, 159-61 (Tex. 1963) (discussing ouster requirement). Notice of repudiation, often termed ouster or disseizen,

is shown by "unmistakable and hostile acts that would put other cotenants on notice of [an] intent to oust them from the leasehold." *Todd*, 365 S.W.2d at 157; *Eckford v. Nixon*, No. 04-24-00183-CV, 2025 LX 405245, at *12-13 (Tex. App.—San Antonio Oct. 8, 2025, no pet. h.)

In sum, the claim of adverse possession so that Parrack was the sole owner of the 339-acre tract does not match the evidence as a matter of law. At a minimum, the finding of adverse possession is so contrary to the evidence as to be manifestly unjust. The Court should, therefore, reverse and remand for a new trial.

## CONCLUSION

For all these reasons, this Court should reverse the trial court's judgment and remand the case for a new trial.

Respectfully submitted,


By: /s/ Greg White
　　　Greg White
　　　Texas Bar No. 21329050
　　　gwhite@grayreed.com

　　　GRAY REED & MCGRAW LLP
　　　900 Washington Ave., Ste. 800
　　　Waco, Texas 76701
　　　Telephone: (254) 342-3000
　　　Facsimile:  (254) 342-3100

Jay B. Goss
Texas Bar No. 08222600
Jgoss@bruhez.com
Joseph Briers
Texas Bar No. 24082730
jbriers@bruchez.com

BRUCHEZ & GOSS, PC
2740 Copperfield Dr.
Suite 200
Bryan, Texas 77802
Telephone: (979) 268-4343
Facsimile:   (979) 268-5323

William F. Carter
Texas Bar No. 03932800
wfcarterlaw@gmail.com
201 North Main St.
Bryan, Texas 77803
Telephone: (979) 779-0712
Facsimile:   (979) 779-9243

ATTORNEYS FOR APPELLANT TOMMY
PARKER, JR.

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), I certify that, according to the word count of the computer program used to prepare this brief, the brief contains 6,105 words.

This brief also complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief was prepared in a proportionally spaced typeface using Microsoft Word in Equity A 14-point font for text and 12-point font for footnotes.

*/s/ Greg White*
Greg White

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Appellant's Brief on the Merits was filed through an approved electronic filing service, and that service was thereby accomplished on counsel listed below on October 16, 2025.


Laura Upchurch
Upchurch & Yates, LLP
315 S. Park St.
Brenham, TX 77833
upchurch@upchurchyates.com

*Attorneys for Appellee – Mary Martha Parrack*

> */s/ Greg White*
> Greg White

## APPENDIX

| | |
|---|---|
| Final Judgment | Tab 1 |
| Jury Charge | Tab 2 |

# Tab 1
# Final Judgment

## CAUSE NO. 18-16110

| | | |
|---|---|---|
| TOMMY PARKER, JR. | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 12th JUDICIAL DISTRICT |
| | § | |
| MARY MARTHA PARRACK | § | MADISON COUNTY, TEXAS |

### FINAL JUDGMENT

This case was tried to a jury on November 6-8 and 13, 2024. Plaintiff Tommy Parker,

Jr., appeared in person and by and through his attorney of record. Kevin Parrack, Jr.,

Independent Executor of the Estate of Defendant Mary Martha Parrack ("Parrack"), appeared

in person and by and through his attorney of record. All parties announced ready for trial.

A jury having been previously demanded, a jury of twelve qualified jurors was duly

accepted, impaneled, and sworn. The case then proceeded to trial on all claims and issues

alleged in the live pleadings at time of trial, being:

1. *Plaintiff's Original Petition*, filed on August 27, 2018, alleging the following causes of action against Parrack in connection with a Special Warranty Deed executed by Plaintiff on August 18, 2011, recorded at Volume 1104, Page 248, of the Official Records of Madison County, Texas ("2011 Special Warranty Deed"), conveying to Parrack all of Plaintiff's executive rights and interests in bonuses received on any mineral leases for 780.9 acres in the West Richardson Survey in Madison County, Texas (the "780.9 Acres"): (a) statutory fraud and misrepresentation; (b) common law fraud; (c) breach of fiduciary duty; (d) promissory estoppel; (e) unjust enrichment; (f) cancellation of deed; (g) negligent misrepresentation; (h) suit to quiet title in the 50% of the 780.9 Acres, made up of two tracts, including approximately 447 acres (the "447 Acres") and approximately 339 acres (the "339 Acres"); and (i) suit for an accounting, as well as a declaratory judgments for cancellation and rescission of the 2011 Special Warranty Deed, and a declaration that all of the surface interest and one-quarter of the mineral interests in the 780.9 Acres is owned 50% by Plaintiff and 50% by Parrack, and that a 2002 conveyance to Parrack and her husband, Kevin Parrack, of the 449 Acres is void;

2. *Defendant's Original Answer*, filed by Parrack on October 1, 2018, including a verified denial regarding Plaintiff's failure to join necessary parties to his suit;

affirmative defenses of waiver, estoppel, ratification, and statute of limitations; and a counterclaim seeking a judgment pursuant to Section 37.00 *et seq.* of the Texas Civil Practice and Remedies Code, declaring that (a) the Parrack Ranch, Ltd. partnership is the owner of all legal and equitable rights in the 780.9 Acres and the mineral rights subject to the 2011 Special Warranty Deed, (b) the 2011 Special Warranty Deed was a valid instrument and conveyed all of Plaintiff's executive rights and interest in lease bonuses for the 780.9 Acres to Parrack; and (c) Parrack is entitled to retain all of the bonus payments, rents and royalties that she has received from the 780.9 Acres since the 2011 Special Warranty Deed was recorded.

After Plaintiff rested, at the conclusion of his case in chief, Parrack orally moved for directed verdict on Plaintiff's request for a declaratory judgment that the 2002 conveyance of the 449 Acres to Parrack and her husband, Kevin Parrack, is void. After hearing the arguments of counsel and considering the evidence in support of that motion, the Court granted it, finding that Plaintiff had waived the claim and failed to file it within the applicable statute of limitations.

On November 13, 2024, the Court submitted questions, definitions and instructions to the jury, after which the jury began deliberations. The jury returned its verdict for Parrack on November 13, 2024. The jury's verdict was received and filed in the papers of this case and such findings were duly received by the Court and were filed and entered of record in the minutes of the Court.

As reflected in the verdict, the jury found the following:

1.  Mary Martha Parrack did not commit statutory fraud against Tommy Parker, Jr., in regard to the transaction represented by the 2011 Special Warranty Deed

2.  Mary Martha Parrack did not commit fraud against Tommy Parker, Jr., in regard to the transaction represented by the 2011 Special Warranty Deed;

3.  Mary Martha Parrack did not make a negligent misrepresentation on which Tommy Parker, Jr., justifiably relied in regard to the transaction represented by the 2011 Special Warranty Deed;

4.  Tommy Parker. Jr.. did not substantially rely to his detriment on Mary Martha Parrack's promise. if any, in regard to the transaction represented by the 2011 Special Warranty Deed.

5.  A relationship of trust and confidence existed between Mary Martha Parrack and Tommy Parker. Jr.:

6.  In regard to the transaction represented by the 2011 Special Warranty Deed. Mary Martha Parrack did not fail to comply with her fiduciary duty to Tommy Parker. Jr.:

7.  Mary Martha Parrack was not unjustly enriched as a result of the transaction represented by the 2011 Special Warranty Deed:

8.  Parrack Ranch. Ltd. held 339 Acres out of the 780.9 Acres in peaceable and adverse possession for a period of at least five years before August 27. 2018:

9.  The reasonable fee for the necessary services of Mary Martha Parrack's attorney for the adverse possession claim was $44,000.

Based on the jury's verdict. the evidence presented at trial, and the arguments of counsel. pursuant to Chapter 37 *et seq.* of the Texas Civil Practice and Remedies Code, and other applicable Texas law. the Court finds as follows:

A.  Parrack is entitled to a declaratory judgment that (i) Parrack Ranch. Ltd. is the owner of all legal and equitable rights, title and interest in the surface of the 447 Acres and the 339 Acres: (ii) the 2011 Special Warranty Deed was a valid instrument and conveyed to Parrack all of Plaintiff's executive rights and his 50% interest in all lease bonuses paid or to be paid on any oil, gas and other minerals in, under and around the 780.9 Acres; and (iii) Parrack is entitled to retain all of the bonus payments she has received since Plaintiff's execution of the 2011 Special Warranty Deed, for leasing of the minerals in. under and around the 780.9 Acres;

B.  Parrack had to retain counsel to represent her in pursuit of her counterclaim for declaratory relief. as set forth in Parrack's Original Answer: and

C.  based on the jury's verdict as to Parrack's attorney's fees. and the Court's findings regarding declaratory relief requested by Parrack. it is equitable and just that Parrack be awarded $44,000 in attorneys' fees and expenses in connection with her request for declaratory relief.

Based on the pleadings, the jury's findings as reflected in the verdict, the evidence admitted at trial, the Court's findings as a matter of law, the record, and the Court's previous orders and rulings, the Court hereby RENDERS judgment for Parrack.

Accordingly, it is ORDERED, ADJUDGED and DECREED that (a) Parrack did not commit statutory fraud, fraud or a breach of fiduciary duty against Plaintiff, nor make a negligent misrepresentation to Plaintiff, in regard to the transaction represented by the 2011 Special Warranty Deed; (b) Plaintiff did not substantially rely to his detriment on Parrack's promise, if any, in regard to the transaction represented by the 2011 Special Warranty Deed; (c) Mary Martha Parrack was not unjustly enriched as a result of that transaction; and (d) Parrack Ranch, Ltd. held the 339 Acres in peaceable and adverse possession for a period of at least five years before August 27, 2018.

It is further ORDERED, ADJUDGED and DECREED that:

A.    Parrack Ranch, Ltd. is the owner of all legal and equitable rights, title and interest in the surface of that certain tract of approximately 780.9 acres of land, with improvements, located three (3) miles of State Highway 90 on Madison County Road 106 (locally known as Ranch Lane) in the West Richardson Survey, comprised of approximately 447 Acres and 339 Acres, as described in a gift deed from J. A. Baker and Willie Lee Baker to Linda Westmoreland, Trustee, recorded on January 4, 1993, in Volume 399, Poage 363 of the Deed Records of Madison County, Texas; being further described in a deed dated December 13, 2002, from Linda Westmoreland, Trustee, to Mary Martha Parrack and Kevin Parrack, recorded at Volume 640, Page 40, Deed Records of Madison County, Texas; and as described in a deed dated December 31, 2012, from Mary Martha (Parker) Parrack to Parrack Brothers Family Limited Partnership, recorded at Volume 1223, Page 132, Official Records of Madison County, Texas;

B.    the 2011 Special Warranty Deed was a valid instrument and conveyed to Parrack all of Plaintiff's executive rights and Plaintiff's 50% interest in all lease bonuses paid or to be paid on any oil and gas and other minerals in, under and around the 780.9 Acres; and

C.     Parrack is entitled to retain all of the bonus payments she received since Plaintiff's execution of the 2011 Special Warranty Deed, for leasing of the minerals in, under and around the 780.9 Acres.

It is further ORDERED, ADJUDGED and DECREED that Parrack have and recover attorneys' fees and expenses from Plaintiff Tommy Parker, Jr. in the amount of $44,000.00 through judgment.

It is further ORDERED, ADJUDGED and DECREED that Parrack have and recover from Plaintiff post-judgment interest on all amounts awarded to Parrack in this Final Judgment, at the rate of 8.00% per annum, compounded annually, from the date of signing of this Final Judgment until it is paid in full.

It is further ORDERED and DECREED that Parrack have and recover from Plaintiff all taxable court costs, pursuant to Texas Rule of Civil Procedure 131.

This Judgment is final and disposes of all claims and all parties, and is appealable. All relief not expressly granted herein is denied. All writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary. The Court ORDERS execution to issue for this judgment.

Signed on _____ Jan 14 _____ , 2024

_____
JUDGE PRESIDING

**APPROVED AS TO FORM AND CONTENT:**

UPCHURCH & YATES, LLP

By: *Laura Upchurch*
     Laura Upchurch
     State Bar No. 00785131
     315 S. Park Street
     Brenham, TX 77833
     upchurch@upchurchyates.com
     *Attorneys for Defendant*


**APPROVED AS TO FORM ONLY:**

BRUCHEZ & GOSS, PC


By:_____
     Jay B. Goss
     State Bar No. 08222600
     3740 Copperfield Cr., Suite 200
     Bryan, Texas 77802
     Telephone: (979) 268-4343
     jgoss@bruchez.com
     *Attorneys for Plaintiff*

Tab 2
Jury Charge

CAUSE NO. 18-16110

TOMMY PARKER, JR.          §          IN THE DISTRICT COURT

                          §
V.                        §          12th JUDICIAL DISTRICT

                          §
MARY MARTHA PARRACK        §          MADISON COUNTY, TEXAS

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this Charge. In discharging your responsibility on this Jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1.      Do not let bias, prejudice or sympathy play any part in your deliberations.

2.      In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3.      Since every answer that is required by the Charge is important, no juror should state or consider that any required answer is not important.

4.      You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5.    You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.    You may render your verdict upon the vote of ten or more members of the Jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror must sign the verdict for the entire Jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings must each sign the verdict.

7.    You have been allowed to take notes during the trial of this case. You may have those notes with you in the jury room during your deliberations. The notes you have taken are not evidence. Your personal recollection of the evidence takes precedence over any notes you have taken. You should base your verdict only on the evidence presented during the trial. You may not display your notes or disclose the contents of your notes to any other juror during your deliberations. To do so is a violation of these instructions.

These instructions are given to you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the Judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again. When

words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case. Whenever a question requires other than a "Yes" or "No" answer, your answer must be based on a preponderance of the evidence, unless the question instructs otherwise.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by Direct Evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by Circumstantial Evidence when it may be fairly and reasonably inferred from other facts proved.

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have the complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror –

1.	to preside during your deliberations,

2.	to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.	to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the Judge,

4.	to vote on the questions,

5.	to write your answers to the questions in the spaces provided, and

6.      to certify your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the Judge of this fact.

When you have answered all of the questions you are required to answer under the instructions of the Judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as a presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

## DEFINITIONS

In answering the following questions, these definitions will apply:

"Parker" refers to Tommy Parker, Jr.

"Parrack" refers to Mary Martha Parrack, Deceased.

"339 Acres" refers to two tracts of real property, comprised of 69.00 acres and 264.90 acres, in the West Richardson Survey in Madison County, Texas, as described in a 1983 Gift Deed from J.A. Baker and Willie Lee Baker to Linda Westmoreland, Trustee, recorded in Volume 399, Page 363, of the Deed Records of Madison County Texas.

"2011 Executive Rights Deed" refers to the Special Warranty Deed dated August 18, 2011, from Tom Parker, Jr. to Mary Martha Parker Parrack, recorded in Volume 1104, Page 248, Official Records of Madison County, Texas.

1024

## Question No. 1

Did Mary Martha Parrack commit statutory fraud against Tommy Parker, Jr. in regard to the transaction represented by the August 18. 2011. Special Warranty Deed?

Fraud occurs when –

1.      there is a false representation of a past or existing material fact. and

2.      the representation is made to a person for the purpose of inducing that person to enter into a contract. and

3.      the representation is relied upon by that person in entering into that contract.

Answer "Yes" or "No."

Answer: __NO__

**If you unanimously answered "Yes" to Question No. 1, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 2

Did Mary Martha Parrack have actual awareness of the falsity of the representation you found to be fraud in Question 1?

Actual awareness may be inferred where objective manifestations indicate a person acted with actual awareness.

Answer "Yes" or "No."

Answer: _____

If you unanimously answered "Yes" to Question No. 1, then answer the following question. Otherwise, do not answer the following question.

## Question No. 3

Was Mary Martha Parrack's action that you found to be fraud excused by waiver by Tommy Parker. Jr.?

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____

If you answered Question No. 1 "Yes," and you answered Question 3 "No," then answer the following question. Otherwise do not answer the following question.

## Question No. 4

What sum of money. if any. if paid now in cash, would fairly and reasonably compensate Tommy Parker. Jr.. for Mary Martha Parrack's fraud?

Answer with an amount in dollars and cents. Do not consider in your answer any amounts you may have awarded. if any. in response to Question Nos. 8. 12. 16. 21 or 25.

Answer: _____ ___

## Question 5

Did Mary Martha Parrack commit fraud against Tommy Parker, Jr. in regard to the transaction represented by the August 18, 2011, Special Warranty Deed?

Fraud occurs when –

1.    a party fails to disclose a material fact within the knowledge of that party, and

2.    the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3.    the party intends to induce the other party to take some action by failing to disclose the fact, and

4.    the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No."

Answer:    **NO**

**If you answered "Yes" to Question No. 5, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 6

By what date should Tommy Parker, Jr., in the exercise of reasonable diligence have discovered the fraud of Mary Martha Parrack in regard to the transaction represented by the August 18. 2011. Special Warranty Deed?

Answer with a date in the blank below.

Answer: _____

1030

If you answered "Yes" to Question No. 5, then answer the following question. Otherwise, do not answer the following question.

## Question No. 7

Was Mary Martha Parrack's fraud excused by waiver by Tommy Parker, Jr.?

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 5 "Yes," and you answered "No" to Question 7, then answer the following question. Otherwise do not answer the following question.

## Question No. 8

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Tommy Parker, Jr., for Mary Martha Parrack's fraud?

Answer with an amount in dollars and cents. Do not consider in your answer any amounts you may have awarded, if any, in response to Question Nos. 4, 12, 16, 21 or 25.

Answer: _____  _____

## Question No. 9

Did Mary Martha Parrack make a negligent misrepresentation on which Tommy Parker. Jr. justifiably relied in regard to the transaction represented by the August 18. 2011. Special Warranty Deed?

Negligent misrepresentation occurs when –

1.  a party makes a representation in the course of his business or in a transaction in which he has a pecuniary interest. and

2.  the representation supplies false information for the guidance of others in their business. and

3.  the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.

Answer "Yes" or "No."

Answer: __NO__

**If you answered "Yes" to Question No. 9, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 10

By what date should Tommy Parker, Jr., in the exercise of reasonable diligence have discovered Mary Martha Parrack's negligent misrepresentation?

Answer with a date in the blank below.

Answer: _____

If you answered "Yes" to Question No. 9, then answer the following question.  Otherwise, do not answer the following question.

## Question No. 11

Was Mary Martha Parrack's negligent misrepresentation excused by waiver by Tommy Parker, Jr.?

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 9, and you answered "No" to Question 11, then answer the following question. Otherwise do not answer the following question.

## Question No. 12

What sum of money. if any. if paid now in cash. would fairly and reasonably compensate Tommy Parker. Jr.. for Mary Martha Parrack's negligent misrepresentation?

Answer with an amount in dollars and cents. Do not consider in your answer any amounts you may have awarded. if any. in response to Question Nos. 4. 8. 16. 21 or 25.

Answer: _____

## Question No. 13

Did Tommy Parker, Jr., substantially rely to his detriment on Mary Martha Parrack's promise, if any, in regard to the transaction represented by the August 18, 2011, Special Warranty Deed, and was this reliance foreseeable by Mary Martha Parrack?

Answer "Yes" or "No."

Answer: __NO__

If you answered "Yes" to Question No. 13, then answer the following question. Otherwise, do not answer the following question.

## Question No. 14

By what date should Tommy Parker, Jr., in the exercise of reasonable diligence have discovered the injury caused to him, if any, by the promise made by Mary Martha Parrack in regard to the August 18, 2011, Special Warranty Deed?

Answer with a date in the blank below.

Answer: _____

**If you answered "Yes" to Question No. 13, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 15

Was Tommy Parker. Jr.'s reliance on a promise made by Mary Martha Parrack in regard to the transaction represented by the August 18, 2011. Special Warranty Deed. excused by waiver by Tommy Parker. Jr.?

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____

**If you answered "Yes" to Question No. 13, and you answered "No" to Question 15, then answer the following question. Otherwise do not answer the following question.**

## Question No. 16

What sum of money. if any. if paid now in cash, would fairly and reasonably compensate Tommy Parker. Jr., for Mary Martha Parrack's promise?

Answer with an amount in dollars and cents. Do not consider in your answer any amounts you may have awarded. if any, in response to Question Nos. 4. 8. 12. 21 or 25.

Answer: _____

1040

## Question No. 17

Did a relationship of trust and confidence exist between Mary Martha Parrack and Tommy Parker, Jr.?

A relationship of trust and confidence existed if Tommy Parker. Jr. justifiably placed trust and confidence in Mary Martha Parrack to act in Tommy Parker. Jr.'s best interest.

Tommy Parker, Jr.'s subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No."

Answer: __Yes__

**If you answered "Yes" to Question No. 17, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 18

In regard to the transaction represented by the August 18. 2011 Special Warranty Deed,

did Mary Martha Parrack fail to comply with her fiduciary duty to Tommy Parker. Jr.?

Because a relationship of trust and confidence existed between them. on August 18. 2011, as a fiduciary to Tommy Parker. Jr., Mary Martha Parrack owed Tommy Parker. Jr. a fiduciary duty.  To prove she complied with her fiduciary duty. Mary Martha Parrack must show by a preponderance of the evidence that:

1. the transaction in question was fair and equitable to Tommy Parker. Jr.; and

2. Mary Martha Parrack made reasonable use of the confidence that Tommy Parker. Jr. placed in her: and

3. Mary Martha Parrack acted in the utmost good faith and exercised the most scrupulous honesty toward Tommy Parker, Jr.; and

4. Mary Martha Parrack placed the interests of Tommy Parker. Jr. before her own and did not use the advantage of her position to gain any benefit for herself at the expense of Tommy Parker, Jr.; and

5. Mary Martha Parrack fully and fairly disclosed all important information to Tommy Parker, Jr. concerning the transaction.

Answer "Yes" or "No."

Answer: __NO__

**If you answered "Yes" to Question No. 18, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 19

By what date should Tommy Parker. Jr.. in the exercise of reasonable diligence have discovered Mary Martha Parrack's failure to comply with her fiduciary duty?

Answer with a date in the blank below.

Answer: _____

If you answered "Yes" to Question No. 18, then answer the following question. Otherwise, do not answer the following question.

## Question No. 20

Was Mary Martha Parrack's failure to comply with her fiduciary duty excused by waiver by Tommy Parker, Jr.?

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____

**If you answered "Yes" to Question No. 18, and you answered "No" to Question 20, then answer the following question. Otherwise, do not answer the following question.**

### Question No. 21

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Tommy Parker, Jr., for Mary Martha Parrack's fraud?

Answer with an amount in dollars and cents. Do not consider in your answer any amounts you may have awarded, if any, in response to Question Nos. 4, 8, 12, 16, and 25.

Answer: _____

## Question No. 22

Was Mary Martha Parrack unjustly enriched as a result of to the transaction represented by the 2011 Executive Rights Deed?

Unjust enrichment occurs when —

1. a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain, or

2. a person obtains a benefit from another by fraud, duress, or the taking of an undue advantage.

Answer "Yes" or "No."

Answer: __NO__

**If you answered "Yes" to Question No. 22, then answer the following question. Otherwise, do not answer the following question.**

## Question No. 23

By what date should Tommy Parker, Jr., in the exercise of reasonable diligence have discovered that Mary Martha Parrack was unjustly enriched as a result of the April 18, 2011, Special Warranty Deed?

Answer with a date in the blank below.

Answer: _____

If you answered "Yes" to Question No. 22, then answer the following question. Otherwise do not answer the following question.

### Question No. 24

Was Mary Martha Parrack's unjust enrichment as a result of the August 18. 2011, Special Warranty Deed excused by waiver by Tommy Parker. Jr.?

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question No. 22, and you answered "No" to Question 24, then answer the following question. Otherwise do not answer the following question.

## Question No. 25

What sum of money, if any, if paid now in cash, would fairly and reasonably restore in Tommy Parker, Jr., the amount by which Mary Martha Parrack was unjustly enriched?

Answer with an amount in dollars and cents. Do not consider in your answer any amounts you may have awarded, if any, in response to Question Nos. 4, 8, 12, 16, and 21.

Answer: _____

## Question No. 26

Did Parrack Ranch. Ltd. hold the 339 Acres in peaceable and adverse possession for a period of at least five years before August 27, 2018?

"Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

"Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person.

"Claim of right" means an intention to claim the real property as one's own to the exclusion of all others.

A claim of right is hostile only if either (1) it provides notice, either actual or by implication, of a hostile claim of right to the true owner; or (2) the acts performed on the real property, and the use made of the real property, were of such a nature and character that would reasonably notify the true owner of the real property that a hostile claim is being asserted to the property.

To establish peaceable and adverse possession, a claimant must also have –

1. cultivated, used, or enjoyed the property;
2. paid the applicable taxes on the property; and
3. claimed the property under a duly registered deed.

Peaceable and adverse possession by a person may be established by adding together the period of possession of the prior holder(s) of title.

The possession by an owner of an interest in property will be presumed to be his right as a co-owner. The possession, to be adverse to the other owner, must be of such acts as to amount to an ouster of the other owner, and must be of such an unequivocal nature and so distinctly hostile to the other's rights that the intention to claim the property is clear and unmistakable.

Answer "Yes" or "No."

Answer: __Yes__

If you answered Question No. 26 "Yes," then answer the following question. Otherwise do not answer the following question.

## Question No. 27

What is a reasonable fee for the necessary services of Mary Martha Parrack's attorney for the adverse possession claim?

A reasonable fee is the reasonable hours worked, and to be worked, multiplied by a reasonable hourly rate for that work.

Do not include fees that do not relate to the claim of adverse possession.

Answer with an amount in dollars and cents for each of the following:

1.    For representation in the trial court.

     Answer: $ 44,000.00

CAUSE NO. 18-16110

| | | |
|---|---|---|
| TOMMY PARKER, JR. | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 12th JUDICIAL DISTRICT |
| | § | |
| MARY MARTHA PARRACK | § | MADISON COUNTY, TEXAS |

## CERTIFICATE

We. the jury. have answered the above and foregoing questions as herein indicated. and

herewith return same to the court as our verdict.

(To be signed by the presiding juror if unanimous)

_____
PRESIDING JUROR

_____
Printed Name of Presiding Juror

Michael Corley

(To be signed by those rendering the verdict if the jury is not unanimous.)

| Jurors' Signatures | Jurors' Printed Names |
|---|---|
| Christina Brooks | Christina Brooks |
| Kaleigh Kelly | Kaleigh Kelly |
| Chris Nealey | Chris Nealey |
| | JOSEPH RENNER |
| William Viser | William Viser |
| Darlene Albers | Darlene Albers |

| Jurors' Signatures | Jurors' Printed Names |
|---|---|
| *Emilie Blakley* | Emilie Blakley |
| *SMunsey* | Synthia Munsey |
| *Lauren Newton* | Lauren Newton |
| *Michael Corley* | Michael Corley |
| | |

Signed on November **13**, 2024.

_____
PRESIDING JUDGE

**FILED**
AT **1:55** O'CLOCK **p** M

NOV 1 3 2024

*Rhonda Savage*
Rhonda Savage, District Clerk
12th/278th Judicial District Court,
Madison County, Texas
by:_____ Deputy

1053

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Greg White on behalf of Greg White
Bar No. 21329050
greg.white@texapplaw.com
Envelope ID: 106972581
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief Requesting Oral Argument
Status as of 10/17/2025 11:18 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Carter | 3932800 | wfcarterlaw@gmail.com | 10/17/2025 10:43:04 AM | SENT |
| Steven White | 21329050 | gwhite@grayreed.com | 10/17/2025 10:43:04 AM | SENT |
| Jay Goss | 8222600 | jgoss@bruchez.com | 10/17/2025 10:43:04 AM | SENT |
| Joseph Briers | 24082730 | jbriers@bruchez.com | 10/17/2025 10:43:04 AM | SENT |
| Laura Upchurch | | upchurch@upchurchyates.com | 10/17/2025 10:43:04 AM | SENT |